## 10396

HOWELL v. SOUTHERN RAILWAY COMPANY *ET AL.*

(102 S. E. 856.)

1. MASTER AND SERVANT—THAT TRUCKS ON TOOL CAR WERE INSECURE ADMISSIBLE UNDER PLEADING.—In an action by conductor injured when trucks on a tool car rolled along the rail track on the car and struck him, evidence as to the proper method of loading and as to the insecureness of the trucks *held* admissible under an allegation that the wheels were not properly fastened.

2. APPEAL AND ERROR—EVIDENCE TO SAME EFFECT AS EVIDENCE ALREADY RECEIVED HARMLESS.—In an action against a railroad company where its own yardmaster testified that trucks on a tool car were insecure, the admission of plaintiff's evidence to that effect was inconsequential if erroneous.

3. EVIDENCE—THAT WITNESS' SUPERIOR WAS IN COURT, BUT NOT CALLED, HELD ADMISSIBLE.—Where plaintiff's witness who testified that he did not put braces on tool car to keep trucks from rolling and that he was so directed by his superior, testimony that his superior was in Court, but was not called, admissible.

4. Appeal and Error—Argument Not in Case and Without Objection Made Cannot Be Questioned.—Where the reference to flagman was brought out by the defendant railroad company on cross-examination, an objection that plaintiff's attorney stated that the company gave plaintiff yard conductor a negro flagman cannot be considered on appeal, where the objection to the argument did not raise that point and the case showed no such argument.

5. Master and Sergant—Conductor Held Not to Have Assumed Risk of Insecure Trucks on Tool Car.—A yard conductor *held* not to have assumed the risk of injury from unfastened trucks breaking out of the inclosed portion of a tool car on which· he was riding, where he was under no obligation to examine that portion of the car.

6. Master and Servant—Negligence in Riding on Tool Car Held for Jury.—In an action by a conductor injured by insecure trucks while riding on a tool car, where the evidence was conflicting as to whether he should have ridden on the car or engine, motion for directed verdict on the ground he should have ridden on the engine was properly refused

7. Master and Servant—Evidence of Work Done on Car Before Injury Admissible.—In an action by a conductor hurt when insecure trucks broke out of box car portion of tool car on which he was riding, evidence as to work done on the car 48 hours previous showing that the trucks were not firmly fastened is admissible; the presumption being that the condition continued to exist.

8. Master and Servant—Acquittal of Vice Principal Held Not to Exonerate Master.—Where injured employee sued master and vice principal, the exoneration of the vice principal will not free the master unless the vice principal was the only agency by which the injury could have been caused.

9. Appeal and Error—Where Jury Correctly Answered Question, That Court Should Have Determined Question Was Harmless.—Where the jury correctly answered a special issue, the fact that the Court should have determined the question is no ground for complaint.

10. Master and Servant—Violation of Rules Not Necessarily Negligence.—The violation by railroad employee of the company's rules is not necessarily negligence, and the employee is justified in violating the rule where to follow it would accomplish disaster.

Before Townsend, J., Richland, Summer term, 1919. Affirmed.

Action by L. C. Howell against the Southern Railway Company and another. From a judgment for plaintiff, the first named defendant appeals.

*Mr. Frank G. Tompkins,* for appellant, submits: *Testimony as to acts of negligence not alleged in the complaint was improper:* 33 S. C. 198; 45 S. C. 278; 57 S. C. 435; 82 S. C. 347; 59 L. R. A. 209. *It was improper for counsel to go out of the record in his argument and by so doing he prejudiced appellant's case, and a new trial should have been granted:* 77 S. C. 404; 26 S. C. 118; 2d Enc. P. & P. 752; 80 S. C. 352; 138 U. S. 361; 88 S. C. 229; 92 S. C. 236. *As to whether or not the Judge correctly charged the law on the assumption of risk, and whether or not the verdict should have been directed or nonsuit granted on the grounds that all the evidence showed that plaintiff had assumed the risk of the dangers of which he complained:* 223 U. S. 492; 100 S. C. 153; 232 U. S. 94, 102; 58 L. Ed. 521, 524; 34 Sup. Ct. Rep. 229; 95 C. C. A. 55; 169 Fed. 557; 25 L. R. A. (N. S.) 335; 96 S. C. 228; 100 S. E. 146. *The Judge misdirected the jury when he told them they could find against one or both defendants; whereas, the jury could not have found against Southern Railway without finding against J. M. Williams, its agent:* 106 S. C. 20; 104 S. C. 266. *The presiding Judge erred in submitting to the jury the special issue as to whether or not the work was interstate or intrastate—there being no conflict of testimony, he should have charged the jury whether it was interstate or intrastate and which law would apply:* 238 U. S. 260; 239 U. S. 50. *It was error to refuse to charge that the violation of a rule made for the safety of an employee would debar him from recovery, if the observance of that rule would have saved him from injury:* 96 S. C. 228.

*Messrs. A. F. Spigner* and *D. W. Robinson,* for respondent, cite: *As to negligence of defendant, master:* 97 S. E. 845; — S. C. —; 43 S. C. 379. *As against a nonsuit or direction of verdict:* 108 S. C. 400-1; 105 S. C. 410; 101 S. C. 256; 98 S. C. 52; 95 S. C. 306; 96 S. E. 353; 110 S. C. 374; 109 S. C. 476; 170 U. S. 670-4; 42 L. Ed. 1190-2; (Ga.) 96 S. E. 17; 107 S. C. 392; 95 S. C. 24; 96

S. E. 553; 107 S. C. 523; 95 S. C. 244, and cases. *As to
negligence of plaintiff:* Sec. 3, Fed. Emp. Liability Act, of
April 14, 1916; sec. 2, XXIX Stat., p. 970; 107 S. C. 523;
96 S. E. 553; 110 S. C. 374; 95 S. C. 306; 61 S. C. 474-79;
S. C. Const., art. IX, sec. 15; 61 S. C. 471-80; 97 S. E.
701-2; 170 U. S. 673, 674; 42 L. Ed. 1192; 228 U. S. 322;
57 L. Ed. 855; 191 U. S. 68-9; 48 L. Ed. 100-1; 232 U. S.
102; 58 L. Ed. 524; Fed. Emp. Liability, Richey (2d Ed.),
sec. 72, p. 179; 170 U. S. 672; 42 L. Ed. 1191; 248 Fed.
388; 160 C. C. A. 401; 218 Fed. 367; 134 C. C. A. 175;
210 Fed. 122; 126 C. C. A. 632; L. R. A. 1915c, 9. *As to
extraordinary risks:* 345 U. S. 445, and cases cited; 241 U.
S. 215; 60 L. Ed. 1020; 232 U. S. 102; 58 L. Ed. 524; 89
S. C. 506; 90 S. C. 49; 235 U. S. 402; 90 L. Ed. 287; 107
S. C. 523; 95 S. C. 306; 235 U. S. 380; 59 L. Ed. 279;
Fed. Emp. Liability, Richey (2d Ed.), *supra;* 218 Fed. 367;
134 C. C. A. 176; 221 Fed. 901; 137 C. C. A. 474; 214 Fed.
952; 131 C. C. A. 252; 109 S. C. 476. *As to the submis-
sion by the Court of an issue to the jury as to whether or not
the plaintiff was engaged in interstate or intrastate com-
merce at the time of the accident:* Code, vol. II, part I, sec.
321; 88 S. C. 196-7; 104 S. C. 83; 99 S. C. 197; 110 S. C.
390; 101 S. C. 108; 239 U. S. 354; 60 L. Ed. 326; 96 S. E.
682; 110 S. C. 522; 109 S. C. 357; 96 S. E. 152; 109 S. C.
400; 229 U. S. 161; 57 L. Ed. 1134; 202 U. S. 543, 559;
50 L. Ed. 1142, 1147; 26 Sup. Ct. Rep. 722; 196 U. S. 1,
21; 49 L. Ed. 263, 371; 25 Sup. Ct. Rep. 158. *As to amount
of damages:* 98 S. E. 333; — S. C. —; 233 U. S. 37; 58
L. Ed. 863; 109 S. C. 493; 72 U. S. 90; 18 L. Ed. 595. *As
to verdict against master and not against servant:* 98 S. E.
332; — S. C. —. *As to counsel's right to argue as to wit-
ness being present and not going on stand:* 104 S. C. 32;
18 S. C. L. (14 Rich.) 245. *Charge must be taken as a
whole:* 88 S. C. 565; 95 S. C. 306; 98 S. C. 52-3; 232 U. S.
86; 58 L. Ed. 863.

Plaintiff's reply to appellant's argument:

*As to appellant's claim that testimony was received as to acts of negligence not alleged in the complaint: The acts of negligence testified to were alleged, and the cases cited relate to an entire absence of evidence as to all or any material fact or facts in the case necessary to be proved in order for the plaintiff to recover:* 33 S. C. 201; 45 S. C. 280; 57 S. C. 435; 82 S. C. 347; 59 L. R. A. 209, *and the note thereunder all relate merely to the general doctrine as to general and specific allegations of negligence and the sufficiency thereof. As to appellant's claim that the Court should have directed a verdict on the ground that the plaintiff could have found a safe place to ride, an analysis of the cases cited by counsel will show that they have no application to the facts of the case at bar:* 25 L. R. A. (N. S.) 335; 96 S. C. 228; 100 S. E. 146. *As to the finding against the master and not against the servant: A reference to the cases cited by the counsel will show that they have no application to the case at bar:* 105 S. C. 22; 104 S. C. 267. *As to appellant's complaint of error in submitting to the jury the issue as to whether the plaintiff was engaged in interstate commerce:* 238 U. S. 260; 59 L. Ed. 1300; 239 U. S. 51-2; 60 L. Ed. 140. *Plaintiff was not violating any rule made for his safety and does not come within bow-shot of the principle announced in Stone v. A. C. R., 96 S. C. 228.*

April 12, 1920.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The plaintiff, who is called a yard conductor, sued the railway company and one of its employees, who is called yardmaster, for a tort to the person.

The jury found a verdict for the plaintiff against the railway company, and the company has appealed upon 22 exceptions.

The event transpired at night, betwixt Royster and Columbia, and Royster is a "yard" some three miles out of Columbia.

The plaintiff on that night had charge of a train of cars made up of engine and tender, a flat car loaded with lumber, and a "tool car;" and the engine was "pushing" these two cars from Royster towards the city.

The tool car is described as "part a flat car and part a box car;" the box car part of it as the train was then made up constituted the tail end of the train; and the plaintiff was mounted upon the top of that end, and upon the top edge of the box part which faced towards the engine, and he was facing the engine.

Along the length of the tool car there were laid two rails for a track, upon which to run on and off that car certain trucks which that car carried in emergency, to put efficient trucks under such bad order cars as should need them along the line.

These trucks, and tools beside, were on the rail track within the box car section of the tool car; and a trapdoor hung betwixt the box car section and the flat car section of the tool car.

The controversy hangs about these trucks situate in the box car end of the tool car. The testimony of the plaintiff tended to show that the train had proceeded but a short distance from Royster towards Columbia when from some unexplained cause there was an impact of the cars; the plaintiff fell from the top of the box car section of the tool car, down onto the flat car section of it; the trucks rolled out of the box car section, broke through the trapdoor, ran along the rail track upon the flat car section on and over the prostrated body of the plaintiff.

The particular delict charged against the railway company was its neglect to have these trucks made so secure that they would not run away on the track provided for them.

The duty of the railway company thereabout is not seriously in issue, for its trainmaster testified to that point as follows: "A car is considered properly loaded when there are braces or blocks bolted down to keep those wheels from running up and down the track, and a car is not properly loaded until the chain of the block is bolted to the floor, and when they are not the wheels have a tendency to run up and down when the train is stopped. These wheels weigh about 1,300 pounds apiece. There were six or seven on this car."

Beginning first here at the appellant's first of the nine argued "points," the testimony of the trainmaster makes inconsequential the competency of the testimony of Reynolds and Burt, witnesses for the plaintiff, who testified under objection about the insecureness of the trucks.

The complaint, however, did allege that there were loaded on the tool car "heavy trucks and wheels not properly or safely braced or fastened," and to that the trainmaster, Burt, and Reynolds all testified with perfect competence.

2. The witness, Reynolds, who testified for the plaintiff, was one of the car repairers for the railway company. He testified that, on the Saturday before the accident on Monday, he was at work on the car, drilling holes and putting sufficient braces to keep the trucks from rolling back and forth on the tracks; that he asked his superior, a man named Sharpe, if he should work overtime and finish the job, and Sharpe answered no; he at the same time told Sharpe this: "I told him I had got them so if it was just switched any in the yard I didn't think the trucks would roll through. I said, 'I put five by nines under the wheels,' and I said that wouldn't roll off, I didn't think, if it was just switched in the yard. I said, 'I don't think it will roll off that car if they switch that on that track.'"

When the railway company put up its witnesses Sharpe was not sworn to contradict Reynolds.

The plaintiff in reply testified that Sharpe was at the instant in Court. The Court ruled that so much was competent, and we are of the same opinion. More than that, Gaffney, the trainmaster and a witness for the defendant, testified that Sharpe was "right here in Court."

Under the same "point," also, exception is taken to certain remarks said to have been made by Mr. Spigner in his address to the jury.

Appellant's counsel said in oral argument at the bar that the remarks arraigned the railway company for putting a negro flagman to serve Howell on the night in question, when before that he had been served by a white flagman.

The case, however, does not show that Mr. Spigner made such remarks, and it does not show that the Court's attention was called to such remarks; it shows only that Mr. Tompkins made objection to Mr. Spigner's argument in these words: "Mr. Tompkins: I object to that line of argument. They tried to prove, when the man was on the stand, that we had taken away a flagman from him and given him another man, and he said he wasn't a competent man, but I drew your Honor's attention to the fact that there was no allegation of incompetent help, and you ruled that testimony out."

And the case further shows that Mr. Tompkins not only did not object to the testimony about the change of flagman, but that circumstance was adduced by him on the cross-examination of the plaintiff.

3. That exception is untenable which challenges the charge which the Court made on the subject of the assumption of risk, and which is directed to a refusal of the Court on like grounds to direct a verdict for the defendant.

The Court's action is always referable to the testimony. Under the testimony there was no risk in sight to be assumed. The car was not a "bad order" one. Gaffney,

the trainmaster, so testified. He said: "There was no defect in that car; therefore, it would not be under the head of a car defect."

The car had been in the shops at Columbia, and, as before stated, Reynolds was there "blocking the trucks" in it on Saturday. Before that job was completed, one Parker by wire from Spartanburg on May 6 ordered the car from Columbia to Union to put a pair of wheels under another disabled car at that place. On May 7 Parker advised Gaffney at Columbia by wire that he had been informed that the car "was not loaded," and he returned it from up the road to Columbia on that day, to have necessary material placed on the car and to be forwarded to Union the next day to place trucks under the disabled car.

The car was so returned to Columbia, and to Royster, and Howell was carrying it from Royster into the city to have material placed on it, pursuant to Parker's direction, when the accident occurred.

Howell was, therefore, pushing a tool car which had in the box end of it, concealed from his view by a trapdoor, unblocked trucks on rails. Gaffney, the trainmaster, testified that "It was not the duty of the conductor to inspect the wheels of that car whether they were braced or not."

Under this state of facts the law of the assumption of extraordinary risks was irrelevant, and the Court so distinctly held.

The Court charged correctly the law of the assumption of ordinary risks, and in conformity with Horton's case, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915c, 1, Ann. Cas. 1915b, 475.

That which the Court said about the assumption of extraordinary risks and now excepted to need not have been said, for the testimony did not show any such risk. We shall, therefore, not pursue that inquiry further.

Upon no view of the testimony could the Court have directed a verdict upon the ground that the plaintiff had lost his right by an assumption of the risk.

4. "Point four" of the appellant's argument has to do with the plaintiff's alleged causative negligence in riding upon the tool car, when he should have ridden on the engine; and on that ground a verdict was moved for.

But Mr. Gaffney, an unusually open-minded witness, testified thereabout thus: "If it was safe (to ride on the tool car) so far as he (Howell) knew, he should be there."

Howell testified that he rode on the only place allowable.

Hardin, the engineer, testified to the contrary; that made an issue of fact for the jury, and the law followed hard on the fact.

5. This "point" in the brief is that the testimony failed utterly to show that there was any causal connection betwixt (1) the alleged negligence of the defendant in sending out a tool car with unbraced trucks in it, and (2) the injury to the plaintiff.

When Reynolds, the car repairer, was testifying that the blocking of the trucks was unfinished on Saturday, and that the car was sent out on the line in that condition, Mr. Tompkins made the objection now insisted upon; and the Court ruled thus: "If this was work being done on the car before the accident, it would tend to show the condition at the time of the accident, unless a change is shown."

"Mr. Tompkins: If it was the final condition it was in when this thing happened, but here is a car in the shop being worked on, which afterwards went to Union and came back before the accident, and— The Court: Yes; but he can show the condition from day to day, coming up to the time of the accident. If he shows it was in a certain condition on Saturday, the presumption is it continued that way, unless some change is shown."

The time which elapsed betwixt the first of the above stated events and the second of the above stated events was

at most only 48 hours; the car went out on the line after Saturday night, it was back at Royster on Monday night, and the accident happened then. A condition such as that in the instant case proven to exist on Saturday night will be presumed to persist, without any intervening cause, until Monday night unless the contrary be shown. 1 Greenleaf, section 41.

6. The appellant seeks to bring this cause within the doctrine of *Sparks v. Railroad,* 104 S. C. 266, 88 S. E. 739, and *Jones v. Railroad,* 106 S. C. 20, 90 S. E. 183.

But the acquittal of Williams will not effect the acquittal of the railroad, unless Williams was the only agency by which the event could have been compassed; and the testimony shows abundantly that he was not.

7. There was manifestly no error in the Court's submitting to the jury to find if at the instant the train was engaged in interstate commerce. The jury answered thereto, "Yes."

The exception is that the Court ought to have answered, "Yes;" but, if the fact found is admittedly true, how matters it who found the fact?

8. The exception argued under point 8 is not well taken. The jury could not have understood the Court to hold that the railway company was liable to the plaintiff for the negligence of another of its servants about a matter unrelated to the railway company's duty to the plaintiff.

The inquiry was about a particular act of negligence, and the Court was charging the jury about that act.

9. The last and ninth "point" has to do with the Court's charge about the force and effect of the rules of the railway company.

The Court charged the jury that the mere violation of a rule did not necessarily constitute negligence. That is true. Rules are made to insure safety, and it might be that under some circumstances the following of a rule might accomplish disaster; so that the jury ought in each case to apply

the rule to the circumstances of the case, except that, if the violation shall be in the opinion of the jury the proximate cause of the injury, then its violation shall operate to defeat the servant's right.

But the rules involved in the instant case have little or no relevancy to the facts of the case. The rules which the appellant proved, and upon which it relies, are those with reference to "inspection" of trains.

As we before stated, Mr. Gaffney distinctly testified that it was not Howell's duty to inspect the particular agency which caused the event, to wit, the bracing of the trucks. There was nothing else to inspect, for so far as the testimony shows there was no other disorder in the car.

The testimony also tended to show that there were two inspectors on each yard, and four inspectors at Royster.

The judgment of the Circuit Court is affirmed.