Hon. R. C. WATTS, Associate Justice and Chief
  Justice.

Hon. THOS. P. COTHRAN, Associate Justice

Hon. J. HARDIN MARION, Associate Justice

Hon. EUGENE S. BLEASE, Associate Justice

Hon. JOHN G. STABLER, Associate Justice

Hon. JESSE F. CARTER, Associate Justice

---

### 12226

TERRY PACKING CO. v. SOUTHERN EXPRESS CO. *ET AL.*,

(FOUR CASES)

(141 S. E., 144)

1. Constitutional Law—Express Company Organized to Take Over Under Contract with Director General Business of Independent Companies Consolidated into such Company under Transportation Act Held Liable for Claims Against such Companies (Interstate Commerce Act, § 5, Par. 7, as Amended by Transportation Act 1920, § 407 [49 U. S. C. A., § 5]; Const. U. S. Amend. 14).—American Railway Express Company, being a corporation organized to take over under contract with Director General of railroads business and property of previously independent companies consolidated into such company under Interstate Commerce Act, § 5, Par. 7, as amended by Transportation Act 1920, § 407 (49 U. S. C. A. § 5; U. S. Comp. St. § 8567), *held* liable on claims against companies so consolidated notwithstanding Const. U. S. Amend. 14.

2. Appeal and Error—Objection that Judgment for Particular Defendant Precluded Recovery Against Codefendant Held Not

AVAILABLE WHEN NOT MADE BY MOTION FOR NEW TRIAL.—In action against express company and a company taken over by it to recover on a claim against the latter, objection that judgment in favor of the former company precluded judgment against its successor, not raised in lower Court by motion for new trial, *held* not available on appeal.

3. CORPORATIONS—CONSOLIDATED EXPRESS COMPANY ORGANIZED UNDER CONTRACT WITH DIRECTOR GENERAL HELD LIABLE FOR STATUTORY PENALTIES DUE FROM ONE OF CONSOLIDATED COMPANIES (CIV. CODE 1922, §§ 3888, 3889).—American Railway Express Company, organized under contract with Director General to take over business and property of previously independent companies, being liable for claims against such company, is also liable for penalties under Civ. Code 1922, §§ 3888, 3889, for failure of such company to account for proceeds of C. O. D. shipments.

Before WHALEY, J., County Court, Richland, November, 1923.    Affirmed.

Four consolidated actions by the Terry Packing Company against the Southern Express Company and American Railway Express Company. Judgments for plaintiff, and defendant last named appeals. Judgment affirmed in each case.

See, also, 125 S. C., 198; 118 S. E., 628.

The following is the report of the Interstate Commerce Commission, referred to in the opinion:

By application filed March 22, 1920, as amended, we are requested to approve and authorize the consolidation of the express transportation business. * * *

The application is made under Paragraph 7 of Section 5 of the Interstate Commerce Act, as amended by Section 407 of the Transportation Act 1920 (49 USCA § 5; U. S. Comp. St. § 8567), and reading as follows: "The power and authority of the commission to approve and authorize the consolidation of two or more carriers shall extend and apply to the consolidation of four express companies into the American Railway Express Company, a Delaware corporation, if application for such approval and authority is made to the commission within thirty days after the passage

of this amendatory act; and pending the decision of the commission such consolidation shall not be dissolved."

At the beginning of the period of federal control there were seven express companies operating over the railroads of the United States—the Adams, American, Wells Fargo, Southern, Great Northern, Western, and Northern Express Companies. Of these, the first four named operated over approximately 92 per cent. of the railroad mileage of the country, and transacted approximately 95 per cent. of the express business of the country. After the government assumed control and operation of the railroads, the Director General of Railroads declined to carry out the separate contracts between the railroads and express companies under which the express business had theretofore been conducted, but advised the express companies that if they would form a single corporation he would make a contract with that corporation to conduct the express business as his agent. In June, 1918, the Adams, American, Wells Fargo, and Southern Express Companies, which jointly had secured by lease the express business and the property devoted to that business of the other express companies hereinbefore mentioned, entered into a contract with the Director General by which it was provided that the express companies would cause to be organized a corporation to carry on the express transportation business for the Director General. Thereupon the American Railway Express Company was organized under the laws of Delaware, and, under a contract with the Director General, took over the express business upon the railroads under federal control as agents of the Director General.

The Adams, American, Wells Fargo, and Southern Express Companies exchanged all the property devoted by them to the express transportation business, estimated by the Director General to be of the value of $30,000,000, as of November 30, 1917, together with $3,000,000 in cash for

working capital for the stock of the American Railway Express Company.

A number of protests against the approval and authorization of the consolidation, in the form of resolutions adopted by commercial organizations, letters, and telegrams, have been received by us. In most of these complaint is made that the service rendered by applicant was and is inadequate and unsatisfactory, and this is attributed largely to the lack of competition. In a number of others the policy of at least two of the predecessor companies with respect to the adjustment of claims which arose prior to the consolidation is criticized, and it is urged that if the consolidation is authorized suitable provision should be made to protect the rights of claimants.

The railroad commissions or other public utilities commissions of 33 of the states were represented at the hearing. Only 4 states voiced objections to granting the application on the ground other than the matter of old claims against the Adams and Southern Express Companies.

One of the objections to the unqualified approval of the consolidation which is most strongly urged upon our consideration arises from the policy of the Adams and Southern Express Companies in the settlement of loss and damage claims which accrued prior to the consolidation. When applicant took over the express business July 1, 1918, an arrangement was made between it and the predecessor companies whereby claims which had arisen against the latter were adjusted by applicant for account of the predecessor companies. On June 11, 1918, the predecessor companies issued a point circular signed by the president of each, addressed to their officers, agents, and employees, as follows: "We are beginning to find evidence of anxiety among patrons who have claims outstanding against our respective companies, the impression seeming to prevail that unless the claims are paid before July 1st, there would be difficulty in collecting them. We want to say to you that there is no

need for any anxiety on the part of any patron or shipper, as an agreement has been entered into between our respective companies whereby the handling of these claims will be undertaken by the new company. No suits are necessary, as the new company will undertake to dispose of all of these matters with promptness and without unnecessary trouble or annoyance to our patrons. It is hoped through this notice that persons having claims against our several companies will more fully understand the conditions that obtain, and be willing to allow their claims to take the same course as has been followed in the past. The new company will be as anxious as the public to have all old claims disposed of and out of the way, and every energy will be put forth in that direction."

From the time it began business until the early part of 1919 applicant made settlement of the claims which had accrued against all the predecessor companies, and it still continues the adjustment of the claims which accrued against the American and Wells Fargo Express Companies.

In the early part of 1919 the Adams and Southern Express Companies withdrew from the former arrangement, and since have themselves conducted the adjustment of claims filed against them. Many protests have been received and evidence was offered at the hearing criticizing the treatment accorded claimants by these companies. It is said that their withdrawal from the former arrangement necessitated the presentation of claims at their offices in New York City; that they had no agents or property in states other than New York; and that legal service could be made upon them only in New York. It is further said that in many instances little or no attention was given to letters from claimants, and that in some instances, while in correspondence with the companies with respect to claims and before any declination of the claims, claimants were advised that their claims were barred by the two-year and one-day limitation clause contained in the express receipt.

Even after offering assurances to those seeking adjustment of claims through correspondence that the limitation period would not debar claims until 30 days after declination claimants were advised, without prior declination, that such claims were barred by the limitation clause.    They finally offered to settle claims on a basis of 60 per cent. provided the claims were *prima facie* valid.    This offer, at first made to individual claimants, was given general publicity.    It was testified by one of the protestants that the acceptance of this offer was without avail.    The record indicates that not only have these two companies disregarded their moral obligation with respect to many claims, but that apparently they have endeavored by a studied plan to avoid even their strict legal liability.

While the methods of the Adams and Southern Express Companies in the settlement of claims against them merit the severest condemnation, we are not persuaded that the approval by us of the consolidation, if otherwise in the public interest, should be conditioned as urged by certain of the protestants so as to require the constituent companies to provide for the handling of claims and the service of legal process in the jurisdictions where they formerly operated and to revive claims which may have been barred by the two-year and one-day limitation with respect to filing suit.    We are not authorized under the Interstate Commerce Act to approve the maintenance of the existing consolidation and in connection therewith to prescribe terms as to the manner in which these claims shall be handled as a condition of the continuance of the consolidation.    Nor are we authorized to require the resumption of operation by the constituent companies.    We are merely empowered to approve and authorize the existing consolidation.    The principal objections raised are that claimants must bring suit in New York and that many of the claims, while meritorious, are too small to justify the expense of suit.

Under such circumstances hardship obviously results to the claimants but that does not justify us in requiring the ex-. press companies, as a condition precedent to our approval of the consolidation, to waive any legal defenses which they may elect to make in the Courts. We have repeatedly held that we have no jurisdiction over claims for loss and damage. However, we do have jurisdiction to determine the reasonableness and propriety of carriers' published rules and regulations relating to transportation, and in the *National Industrial Traffic League v. Express Co.*, 58 Interst. Com. Com'n R., 304, following *Decker & Sons v. Director General*, 55 Interest. Com. Com'n R., 453, we found that the clause of the uniform express receipt limiting the period for filing suit to two years and one day after delivery or after a reasonable time for delivery was unreasonable in that it did not provide for a reasonable time within which to file suit after claims which had been under consideration by the express companies had been declined. While the Courts have frequently upheld the right of a carrier to limit the period within which suit shall be brought against it, such limitation, to be successfully pleaded by the carrier, must be reasonable. *Texas & Pac. Ry. Co. v. Leatherwood*, 250 U. S., 478, 481; 39 S. Ct., 517; 63 L. Ed., 1096. *Missouri, K. & T. Ry. v. Harriman*, 227 U. S., 657, 672, 673; 33 S. Ct., 397; 57 L. Ed., 690.

Upon consideration of all the facts and circumstances of record we are of opinion and find that the public interest will be promoted by the consolidation. An order will be entered approving and authorizing the consolidation.

McCORD, Commissioner (dissenting) : I cannot agree with the conclusion reached by the majority that the public interest will be promoted by. this consolidation. It is my view that in no event should we approve this consolidation without making provision for the protection of claimants in their loss and damage claims which accrued against the con-

stituent companies. When it is recalled that all the assets of the consolidated company were acquired from the constituent companies, and that, as a matter of fact, the consolidation is nothing more or less than the merging of property of the constituent companies, it is only just that that property should be subject in the various states to meritorious claims which accrued before merger. Possessing the power to prescribe just and reasonable conditions precedent to the consolidation, our failure to so prescribe lays down the bars to the sharp practices of certain express companies set forth in the majority opinion. It is my view that we cannot escape the responsibility placed upon us by the Interstate Commerce Act in this matter, that has such grave and far-reaching consequences, by merely stating that the Courts have jurisdiction over loss and damage claims.

For these reasons, I am unable to concur in the majority opinion.

Meyer, Commissioner, also dissents.

*Messrs. Frierson & McCants,* for appellants, cite: *Due process of law clause:* Const. of U. S., 14th Amend., Sec. 1. *Liability of defendant for debts of co-defendant:* 123 S. E., 97; 124 S. C., 157; 103 S. E., 129. *Verdict against principal for tort of servant while exonerating servant cannot be sustained:* 113 S. C., 527; 106 S. C., 207; 104 S. C., 266. *Court cannot take property of one person for use of another without due process of law:* 204 U. S., 116; 51 L. Ed., 399; 164 U. S., 403; 17 Sup. Ct., 130; 154 U. S., 34; 14 Sup. Ct., 1108. *Regulation of remittances on C. O. D. shipments; penalties:* Secs. 3888, 3889, Code. *Judicial notice taken of declaration of war by United States:* 13 Wall., 154; 20 L. Ed., 614. *Penal statutes strictly construed:* 89 S. C., 415; 82 S. C., 375; Id., 307; 80 S. C., 527; 86 S. C., 510. *Agent not personally liable on contracts authorized by his disclosed principal:* 92 S. C., 413; 80 S. C., 491; 47 S. C., 139; 37 S. C., 377; 34 A. S. R.,

758; 21 S. C. L., 22; 16 S. C. L., 438; 2 C. J., 812. *One presumption not deducible from another:* 114 U. S., 224; 100 U. S., 693; 25 L. Ed., 761; 92 U. S., 281; 23 L. Ed., 707; 10 Ann. Cas., 1096. *Proof required of plaintiff in action for loss of goods by carrier:* 3 Hutch. on Car. (3d Ed.), Sec. 1352; Moore on Car., Ed. of 1906, 387; 5 A. & E. Enc. L. (2nd Ed.), 354. *Limitations of actions held reasonable:* 118 S. E., 614; 120 S. C., 199; 71 S. C., 506; 5 S. C., 358; 54 Ark., 221; 11 L. R. A., 102; 260 U. S., 682; 67 L. Ed., 460; 250 U. S., 478; 63 L. Ed., 1096; 227 U. S., 657; 57 L. Ed., 690.

*Mr. Edward L. Craig,* for respondent, cites: *Defendant liable for obligations of co-defendant:* 30 A. L. R., 543; 59 I. C. C. Rep., 459; Fletcher on Corp., Sec. 4756. *Same, liable for penalties:* 103 S. E., 129; 2 Brev., 82; 124 Pac., 414; 41 L. R. A. (N. S.), 379. *Action at bar within jurisdiction of Circuit Court:* 118 S. E., 628. *Appellant properly brought into the action by amendment of complaint:* Sec. 436, Code Civ. Proc. *Judgment not in violation of due process clause:* 211 U. S., 78; 29 Sup. Ct., 14; 53 L. Ed., 97. *Notice of failure to remit C. O. D. collection not prerequisite to action therefor:* 184 N. W., 367; 28 N. W., 925; 12 Mo. App., 401. *"Presumption":* 22 C. J., 82. *Proof of agency of express company to deliver package shifts burden to company proving delivery:* 25 S. C., 116; 208 Mass., 331; 34 L. R. A. (N. S.), 1046. *Same, inference from failure of company to keep records:* 91 Ill., 63; 8 B. Mon. (Ky.), 309; Mech. on Ag. (2nd Ed.), Sec. 1344; 2 C. J., 737, 739. *Duty of company to notify shipper of inability to deliver C. O. D. packages:* S. C. R. R. Commission, Rule 62. *Failure of agent to collect money construed against agent:* 91 Ill., 63. *Degree of proof required to enforce penal statute:* 124 Pac., 414; 41 L. R. A. (N. S.), 379; 14 Ill., 365; 22 So., 163; 124 Mass., 277. *Burden of proving fact peculiarly within knowledge*

*of one party:* 2 Cyc. of Ev., 783; 22 C. J., 81. *Admission of opinion evidence to aid determination of Court not error:* 17 Cyc., 28. *Admission of opinion evidence after full statement of facts opinion was based on not error:* 17 Cyc., 60.

June 21, 1927.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The plaintiff, Terry Packing Company, in February, 1920, brought four separate actions, each containing a number of causes of action, against the Southern Express Company. Each of the actions was based upon an alleged failure of the company to account to the plaintiff for the proceeds of certain C. O. D. shipments made by the plaintiff. The penalty of $25 on each shipment, allowed under Sections 3888 and 3889, Code, 1922, Vol. 3, was also claimed.

In April, 1920, the Southern Express Company, through its attorneys, moved before the County Judge for an order vacating the service of the summons in each of the said actions. This motion, upon hearing, was overruled by the County Judge, and thereafter, upon appeal to the Supreme Court, the order sustaining the service as valid was affirmed (125 S. C., 198; 118 S. E., 628). Later, upon motion of plaintiff, leave was granted to amend the summons and complaint in each of the cases by making the American Railway Express Company a party defendant, and by adding an additional paragraph to each cause of action, as follows:

"That American Railway Express Company on or about the 22d day of June, 1918, became incorporated under the laws of Delaware and has continued to be a corporation of that State; that on or about the 9th day of August, 1918, said American Railway Express Company became domesticated under the laws of South Carolina and has continued

to be a domesticated corporation of South Carolina; that during the times mentioned above American Railway Express Company has engaged in business in Richland County, S. C., as a common carrier for hire, handling express, and since the 1st day of July, 1918, has had and still has agents and agencies in said Richland County; that since the 1st day of July, 1918, American Railway Express Company has been the agent of Southern Express Company for the purpose, among others, of adjusting, settling, compromising, and paying the claims, and outstanding and unpaid C. O. D.'s of Southern Express Company, its co-defendant, including the claim and outstanding C. O. D. mentioned and referred to above in this cause of action and for the purpose of defending suits brought to enforce payment of the same, and American Railway Express Company having bought out Southern Express Company with knowledge of the outstanding liabilities of Southern Express Company, including the one mentioned in this cause of action, and with knowledge that Southern Express Company was disposing of all of its property except treasury assets and contemplated going out of business and of winding up its affairs and liquidating, is liable for the debts of Southern Express Company, including the indebtedness mentioned and described in this cause of action."

The plaintiff's amended complaints embraced 259 separate causes of action, each alleging delivery of a C. O. D. shipment, either at Charleston or at Columbia, to the Southern Express Company by the plaintiff, the first shipment being of date August 17, 1916, and the last June 29, 1918.

The defendant Southern Express Company interposed a general denial, and further pleaded the special defenses that a claim in writing had not been filed within four months and that suit had not been brought within two years and one day after the date of such alleged delivery. The American Railway Express Company pleaded a general denial,

and alleged further, after setting up the history and purposes of its organization, that it had not assumed the payment of the claims against the Southern Express Company and was not liable therefor.

The first case was tried by Judge Whaley and a jury on October 29, 1923, and resulted in a verdict for the plaintiff against the American Railway Express Company alone for $774.15. No penalty was allowed upon any of the interstate shipments set forth in this action, and interest was allowed on the whole amount, not including the penalties, from the date of the last shipment. The other three cases were tried on December 11, 1923, and resulted in verdicts for the plaintiff against the American Railway Express Company alone. In each of the said actions no penalties were allowed upon interstate shipments, interest being allowed in each case upon the whole amount, not including penalties, from the date of the last shipment.

From the judgments rendered in the four cases against the American Railway Express Company alone, a total of $8,749.49, that company has appealed to this Court. The appeals in the four cases were heard together at the fall, 1924, term of this Court, and an opinion was filed June 14, 1926, reversing the judgment below in each of the cases. The Court later granted a petition for rehearing, which was had at the January, 1927, term.

As the questions raised by the appeal in each of the cases are the same, we shall consider the appeal taken in the first case only, the disposition of which will dispose of the questions raised in all the cases.

The exceptions, raising numerous questions, will not be considered seriatim.

The first of the two main propositions presented by the appeal may be thus stated: That the American Railway Express Company did not assume the liabilities and obligations of the Southern Express Company

and is not liable in any manner therefor, and to compel it to pay the judgments rendered in this case would be to deprive it of its property without due process of law, in violation of the provisions of Section 1 of the Fourteenth Amendment of the Federal Constitution.

In the report of the Interstate Commerce Commission (appendix to respondent's brief), which will be incorporated in the report of the case, we find the following:

"In June, 1918, the Adams, American, Wells Fargo, and Southern Express Companies, which jointly had secured by lease the express business and the property devoted to that business of the other express companies hereinbefore mentioned entered into a contract with the Director General by which it was provided that the express companies would cause to be organized a corporation to carry on the express transportation business for the Director General. Thereupon, the American Railway Express Company was organized under the laws of Delaware, and, under a contract with the Director General, took over the express business upon the railroads under federal control as agent of the Director General. The Adams, American, Wells Fargo, and Southern Express Companies exchanged all the property devoted by them to the express transportation business, estimated by the Director General to be of the value of $30,000,000, as of November 30, 1917, together with $3,000,000 in cash for working capital, for the stock of the American Railway Express Company."

Since the hearing of this appeal, the United States Supreme Court has handed down its decision in the case of *American Railway Express Co. v. Commonwealth of Kentucky,* 190 Ky., 636; 228 S. W., 433; 30 A. L. R., 543, which involves this same question, namely, the liability of the American Railway Express Company for the old debts of its constituent companies. The decision in that case is adverse to the contention of the appellant in the case at bar.

The Court holds, in substance, that the American Railway Express Company is liable for the old claims against its constituent companies, and that the holding to that effect in the Court below in no way deprived the appellant, the American Railway Express Company, of its property without due process of law, in violation of the Fourteenth Amendment of the Federal Constitution.

In its opinion, reported in 273 U. S., 269; 47 S. Ct., 353; 71 L. Ed., 639, the Court, speaking through Mr. Justice McReynolds, says:

"Considering the circumstances disclosed by the record, there was nothing arbitrary or obviously contrary to the fundamental principles of justice in requiring the petitioner, organized for the purposes shown, to satisfy claims against the Adams Company which arose out of business within the State. The transfer of all the latter's property located in the State materially interfered with the ability of Kentucky creditors to enforce their claims, and, as to them, might have been declared fraudulent. It seems clear that the State, without conflict with the Fourteenth Amendment, might have enacted through its legislative department a statute of precisely the same effect as the rule of law and public policy declared by the Court of Appeals, and its decision is just as valid as such a statute would have been. *Prudential Insurance Co. v. Cheek,* 259 U. S., 530, 548; 42 S. Ct., 516; 66 L. Ed., 1044; 22 A. L. R., 27."

This decision is conclusive of the question raised and makes further discussion of the point unnecessary. See, also, *American Railway Express Co. v. Royster Guano Co.,* 273 U. S., 274; 47 S. Ct., 355; 71 L. Ed., 642.

The second main proposition presented by the appeal may be thus stated: That even if the American Railway Express Company is liable for the old claims against the Southern Express Company, the fact that the verdict of the jury exonerated the Southern Express Company from liability

for the delicts charged against it would, as a matter of law, exonerate the American Express Company as well.

An examination of the record does not disclose that this point was raised in the Court below by a request to charge or by a motion for a new trial. Hence, the question raised here for the first time is not properly before this Court for consideration. *Gaines v. Durham et al.,* 124 S. C., 435; 117 S. E., 732.

The *Gaines Case* was an action against Durham and Masters on an account for fertilizers alleged to have been sold them by the plaintiff. Masters contended that his undertaking to pay for the fertilizers was not an original one, but only collateral, to answer for the debt of Durham. The verdict was against Masters alone, and on appeal he took the position that, if valid, the verdict should have been against both defendants. While the Court held that the undertaking of Masters was original, it pointed out that if it were not, his position should have been urged in the trial Court by a request to charge or by a motion for a new trial. Speaking through Mr. Justice Cothran, the Court said:

"Besides, if there had been any force in the position, it should have been urged upon a request to charge or a motion for a new trial, neither of which was done."

The appellant complains of error on the part of the trial Judge in refusing its motion for a new trial, upon the grounds stated in the motion and incorporated in its exception II. The first ground has already been disposed of. The second ground stated therein, that even if the appellant could be held liable for the obligations of the Southern Express Company, it could not be legally subjected to the penalties for which the Southern Express Company might be liable, is without merit.

As said in *McAlister v. American Railway Express Co.,* 179 N. C., 556; 103 S. E., 129; 15 A. L. R., 1090:

"We do not agree with its [defendant's] view that the plaintiff is seeking to impose directly upon the defendant the penalty of our statute mentioned in the complaint.   It only seeks to recover the penalty, if entitled to it, as a part of the debt or liability of the Southern Express Company to him.   He could not recover the $50 simply as a penalty imposed on the defendant by the State for its delinquency, because it was not in the possession of the Southern Express Company's property when the penalty accrued, but, if defendant were at all indebted to plaintiff, the liability would include the penalty as a part of the sum due the plaintiff from the Southern Express Company."

As to the third and fourth grounds stated in the motion an examination of the record discloses that there was ample testimony to support the findings of the jury, and that the trial Judge committed no error in refusing a new trial upon these grounds.

We do not deem it necessary to discuss the other questions raised by the exceptions to which no special reference has been made.   However, we have not neglected to examine and to consider them carefully.   Our consideration of them leads to the conclusion that they are without merit.

All exceptions are overruled, and the judgment of this Court is that the judgment of the Richland County Court in each of the four actions be affirmed.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE BLEASE concur.

MR. JUSTICE COTHRAN (dissenting) :   This case was heard at the fall term, 1924, by the Court then composed of Chief Justice Gary, and Associate Justices Watts, Fraser, Cothran, and Marion.   After the death of Justice Fraser, Acting Associate Justice Purdy participated in the decision.

On June 14, 1926, an opinion prepared by me, and concurred in by Justice Marion and Acting Associate Justice

Purdy, was filed as the judgment of the Court, reversing the judgment of the County Court and remanding the case for judgment in favor of the defendant under Rule 27. Thereafter a petition for a rehearing was granted, and at the January term, 1927, the appeal was heard by the Court, then consisting of Associate Justices Watts, Cothran, Blease, and Stabler and Acting Associate Justice Purdy.

The decision was suspended pending the disposition by the Supreme Court of the United States of the case of *American Railway Express Company v. Kentucky,* which was supposed to involve the same question. On February 21, 1927, the Supreme Court of the United States handed down its opinion deciding against the Adams Express Company. By an examination of that opinion it will appear that the decision was based solely upon the validity and nonreviewableness of the State decision. (Let it be reported.)[1]

I think, therefore, that this Court is not bound by that decision and is entitled to exercise its independent judgment in the matter.

I further am of opinion that under the circumstances of this case the conclusion announced by Justice Stabler comes within the inhibition expressed by Justice McReynolds in his opinion in the above-stated case: "We cannot interfere unless the judgment * * * is in clear conflict with the fundamental principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights"—and that the judgment should be reversed for the following reasons:

On February 23, 1920, the plaintiff instituted in the County Court of Richland County four separate actions against the Southern Express Company, each containing a

[1] See 273 U. S., 269; 71 L. Ed., 639; 47 S. Ct., 353.

number of separate causes of action, based upon the alleged failure of the company to account for the proceeds of C. O. D. shipments made by the plaintiff, and for the penalty of $25 upon each of the shipments, under Sections 3888, 3889, Code, 1922, Vol. 3.

The four actions involved 259 shipments, upon which were claimed the amounts of the bills, interest, and penalties, aggregating about $10,000, the dates ranging from August 17, 1916, to June 29, 1918.   In each of the four actions the summons and complaint were attempted to be served upon the then sole defendant Southern Express Company.   On March 30, 1920, that company, appearing specially for the purpose of the motion, gave notice of a motion in each action for an order setting aside the service of the summons and complaint, upon the ground that it was no longer doing business in this State.   The motion was heard by his Honor, County Judge Whaley, who on April 15, 1920, passed an order refusing the motions.   From that order the defendant appealed to this Court, which in an opinion filed March 12, 1921 (125 S. C., 198; 118 S. E., 628), affirmed the order of Judge Whaley.   Its connection with the American Express Company was not considered.   The defendant then sought to have the judgment reviewed by the Supreme Court of the United States, which, however, dismissed the writ of error, December 11, 1922, 260 U. S., 707; 43 S. Ct., 165; 67 L. Ed., 474, upon the ground of want of jurisdiction, there having been no final judgment. Thereafter the plaintiff moved to amend the summons and complaint in each of the four actions, by making the American Railway Express Company a party defendant, and by adding an additional paragraph to each cause of action, as follows:

"That American Railway Express Company on or about the 22d day of June, 1918, became incorporated under the laws of Delaware, and has continued to be a corporation of

that State; that on or about the 9th day of August, 1918, said American Railway Express Company became domesticated under the laws of South Carolina and has continued to be a domesticated corporation of South Carolina; that during the times mentioned above, American Railway Express Company has enagaged in business in Richland County, S. C., as a common carrier for hire, handling express, and since the 1st day of July, 1918, has had and still has agents and agencies in said Richland County; that since the 1st day of July, 1918, American Railway Express Company has been the agent of Southern Express Company for the purpose, among others, of adjusting, settling, compromising, and paying the claims, and outstanding and unpaid C. O. D.'s of Southern Express Company, its co-defendant, including the claim and outstanding and unpaid C. O. D. mentioned and referred to above in this cause of action, and for the purpose of defending suits brought to enforce payment of the same; and American Railway Express Company having bought out Southern Express Company, with knowledge of the outstanding liabilities of Southern Express Company, including the one mentioned in this cause of action, and with knowledge that Southern Express Company was disposing of all of its property except treasury assets, and contemplated going out of business and of winding up its affairs and liquidating, is liable for the debts of Southern Express Company, including the indebtedness mentioned and described in this cause of action."

The motion to amend was granted by an order dated May 25, 1923, in what may be designated as "action No. 1." Similar motions were made in actions 2, 3, and 4, and were granted by orders dated June 8, 1923.

As the four actions are practically identical, the determination of the legal principles involved in one will be conclusive of the other three. A consideration of the first action is therefore all that is necessary.

The complaint in this action contained 24 separate causes of action, and as to each it is alleged that the Southern Company received the shipment, delivered it to the consignee, collected the C. O. D. bill, and has failed to account therefor; that accordingly for the reasons stated it is liable to the shipper for the amount of the bill, with interest, and for the penalty under the statute, of $25.

The defendant Southern Company answered with a general denial, and set up the special defenses that a claim in writing had not been made within four months after delivery, and that suit had not been instituted within two years and one day after delivery, as required by the "Uniform Express Receipt," applicable.

The defendant American Company answered with a general denial, and as special defenses set up the history and purpose of its organization as hereinafter explained; that after July 1, 1918, and up to April 1, 1919, it acted as agent for the Southern Company in the adjustment and payment of claims against it arising out of transactions prior to July 1, 1918, but that that agency had been revoked on April 1, 1919; that it had never assumed the payment of any claims against the Southern, and was in no way obligated thereto; that to hold it liable for them would constitute a taking of its property in violation of the Federal Constitution. The same defense as to filing claims and bringing suit which was interposed by the Southern Company was also interposed by the American.

The case was tried before his Honor, Judge Whaley, of the Richland County Court, and a jury, on October 29, 1923, and resulted in a verdict in favor of the plaintiff, against American Railway Express Company alone for $774.12, made up as follows:

Items ............................$ 284.92
Interest ...........................  114.20
Penalties ..........................  375.00
                                     _____
                                     $ 774.12

The other three cases were tried to a jury December 11, 1922, and resulted similarly in verdicts against the American Railway Express Company alone, the verdicts being composed of the same elements, and being as follows:

Action No. 2 ....................$ 2,750.20
Action No. 3 ....................  2,285.55
Action No. 4 ....................  2,939.62
Which, with the verdict in action No. 1   774.12
                                     _____
Make a total of..................$ 8,749.49

From the several judgments entered upon these verdicts, the American Railway Express Company has appealed to this Court.

The appeals in the four cases were heard together.

There are many questions raised by the exceptions, but the appeal turns really upon a disposition of the two following propositions:

(1) There was no evidence in the case tending to show that the American Railway Express Company, expressly or impliedly, assumed the outstanding obligations and liabilities of the Southern Express Company; the motion of the American Railway Express Company for a directed verdict should therefore have been granted.

(2) Conceding that there was some evidence tending to show that the American Railway Express Company, expressly or impliedly, assumed the outstanding obligations and liabilities of the Southern Express Company, the fact that the verdicts exonerated the Southern Express Company

from liability on account of the delicts alleged against it in the complaint, and charged the American Railway Express Company alone, constitutes in law an exoneration of the latter company; the judgment should therefore be reversed on this account.

*The First Proposition.*—That there was no evidence in the case tending to show that the American Railway Express Company, expressly or impliedly, assumed the outstanding obligations and liabilities of the Southern Express Company; the motion of the American Railway Express Company for a directed verdict should therefore have been granted.

I adopt the very clear and fair statement of the undisputed facts of the case, contained in the argument of the counsel for the appellant American Company as follows:

"For many years prior to December 27, 1917, the Southern Express Company, Adams Express Company, Wells Fargo & Co., and American Express Company, carried on the business of transporting express matter, for hire, over the railroads throughout the United States. The transportation carried on by these companies was both intrastate and interstate. The Southern Express Company was and is a corporation of the State of Georgia, and it carried on business throughout the southern states and had, in most of those States, practically a monopoly of the express transportation business. Its business was profitable and valuable. None of these companies owned the railroads over which their transportation was conducted, nor the engines which hauled the trains, nor the express cars into which the express matter transported was loaded. They all operated under and by virtue of exclusive contracts which they entered into, from time to time, with the several railroad companies which owned the various lines of railroad over which the several express companies carried on business. (See a history of the development of the express business

in the Express Cases, 117 U. S. 1; 6 S. Ct., 542, 628; 29 L. Ed., 791.)

"On December 27, 1917, the President of the United States, acting under authority of an Act of Congress, and in order to unify all of the railroad systems in the United States under one management, with a view to increasing the efficiency of our transportation system and in furtherance of the war against Germany, issued his Proclamation, effective on December 28, 1917, and on that day took the railroads of the country out of the possession of their owners, the several railroad companies, and placed their operation under the direction and control of the Director General of Railroads. This drastic action, taken as a war measure, had the effect of rendering the railroad companies powerless to carry out their several contracts with the express companies, and the latter were impotent to conduct their transportation business without the assistance of the Director General. He refused to carry out the contracts which the railroad companies had made with the express companies, and he also refused to enter into new contracts with those companies, but agreed that if the express business should be unified into a single company, he would enter into a contract with that company. The Southern Express Company did not desire to enter into this arrangement, because its territory, being practically exclusive, its business was more remunerative, comparatively, than the business of the other express companies. It was forced, however, by pressure of the circumstances, to yield to the inevitable. A contract was, therefore, entered into between the United States and four express companies named above, on the 21st day of June, 1918, and thereafter and pursuant to the terms of said contract, the American Railway Express Company was incorporated under the laws of the State of Delaware, on the 22d day of June, 1918, and, immediately upon its incorporation, the Director General of Railroads, on the 26th

day of June, 1918, entered into a contract with that company whereby he employed that company as the exclusive agent of the Director General, to conduct the express transportation business over all railroads under federal control.   This contract took effect on July 1, 1918, and at midnight on June 30, 1918, the Southern Express Company ceased absolutely to do any express transportation business.

"Upon the incorporation of the American Railway Express Company, and under and pursuant to the terms of the contract between the United States and the express companies, the four old companies transferred to the Delaware corporation all of their operating property which had been used by them in the express transportation business.   This transfer was at a valuation fixed by the Director General of Railroads, and the Delaware corporation paid for the property transferred and conveyed to it by issuing its stock in exchange thereof.   For its property thus sold and transferred to the American Railway Express Company, the Southern Express Company was paid in stock of the new company, and now owns ten (10) per cent. of the stock of the American, out of a total authorized issue of $40,000,000.   The Southern Express Company did not cease to exist and did not transfer its treasury assets, or its real estate not used in the business.   These assets amount to about $1,000,000, in addition to the stock which it owns in the American.

"While it was engaged in the express transportation business in South Carolina, and between the 17th day of August, 1916, and the 29th day of June, 1918, the Southern Express Company handled the 259 separate shipments mentioned and described in the four actions comprised in this appeal.   The American Railway Express Company was not incorporated until the 22d day of June, 1918, and did not begin business until July 1, 1918, and did not handle a single shipment involved in these four actions."

In the case of *Brown v. American Railway 'Express Co.,* 128 S. C., 428; 123 S. E., 97, the Court held that there was *evidence tending to establish* all of the facts upon which the conclusion in the case of *McAlister v. American Railway Express Co.,* 179 N. C., 556; 103 S. E., 129; 15 A. L. R., 1090, was rested; that these facts were *admitted in the Mc-Alister case;* and that *"the conclusion reached upon the admitted facts in that case is sound";* but that in the *Brown case,* then under consideration, "the proof of those facts was not conceded," and that consequently the Circuit Judge did not commit error in refusing the defendant's motion for a directed verdict. *The irresistible conclusion is that if those facts paralleling the admissions in the McAlister case had been conceded, the case would have taken the course adopted in the McAlister case—a directed judgment in favor of the express company.*

If it can be demonstrated that in the case at bar the facts upon which the *McAlister case* was rested have been conceded, the result must parallel the result in the *McAlister case.*

Counsel for the respondent opens his printed argument with this statement:

"The most *authoritative* and comprehensive statement of the facts and circumstances surrounding the transaction of June, 1918, between American Railway Express Company and its constituent companies, is found in the statement of the same by the Interstate Commerce Commission, 59 Interst. Com. Com'n R., 459 (attached as an appendix to his brief).   Other clear statements will be found in the opinion of the Supreme Court of Kentucky, reported in 190 Ky., 636; 228 S. W., 433; 30 A. L. R. page 543 and annulated cases."

This statement cannot be otherwise interpreted than that the statements of fact contained in these references were adopted by him as "authoritative, comprehensive, and clear."

In addition to this counsel further states in his printed brief: *"The facts of the McAlister case were identical to with (?) the facts of this case."*

It would be tedious and unecessary to set forth a detailed comparison of the admitted facts in the *McAlister case* with the facts stated in the references of counsel (the I. C. C. report and the *Kentucky case*) ; but upon an investigation, which is so readily at hand, it will be seen that every substantial fact contained in the *McAlister case* is supported by references of counsel.   With the documentary evidence in the case, the uncontradicted testimony of the witnesses acquainted with the facts and the sweeping, comprehensive admission of counsel for the plaintiff, the facts upon which the *McAlister case* was rested appear in the case at bar, established beyond doubt.

The circumstances attending this arrangement between the constituent corporations and the American Company, are without parallel in the judicial history of the world. The government was at war with Germany and its allies; it had taken over the railroads of the nation and was operating them under a Director General; the express companies all had contracts with the railroad companies in connection with the express transportation business; the government did not act with the express companies as it had done with the railroads, but virtually took them over under an arrangement which was in effect the same as if it had put them under the same administration as the railroads; it did not ask the consent of the express companies, but compelled them to organize a new corporation which was to operate all of the express companies *as the agent of the Director General of Railroads.*

It was an emergency proposition and was expressly limited by the contract between the Director General and the express companies, to that emergency, as appears from the following provision of the contract:

"Wherefore it is agreed that the express companies shall maintain their independent corporate existence, and that upon the termination of federal control the proprety herein agreed to be conveyed by each of them to the new corporation (or the equivalent of such property) shall be reconveyed to it by the new corporation (back to them) at a valuation to be agreed upon or in the event of disagreement to be fixed by the Interstate Commerce Commission."

It is exceedingly questionable whether this action could have been maintained against the American Company, which was by the conditions of its organization, the agent of the Director General, if seasonable objection had been made. It certainly could not have been maintained against the Director General, who was in no wise responsible for the contracts or torts of the constituent express companies prior to his practically taking them over, and it is difficult to perceive how his agent could have been held responsible for them.

While the decision in the *Brown case,* under the peculiar circumstances which are identical with those of the present case, is unquestionably correct, it should not be extended to all cases of a purchase by one corporation of the assets of another. I agree to the general proposition advanced in the Virginia and Kentucky cases (*Am. Ry. Ex. Co. v. Downing,* 132 Va., 139; 111 S. E., 265; *Am. Ry. Ex. Co. v. Royster,* 141 Va., 602; 126 S. E., 678; *Am. Ry. Ex. Co. v. Kentucky,* 190 Ky., 636; 228 S. W., 433; 30 A. L. R. 543), that a corporation which purchases the business and assets of another which has sufficient tangible assets in the State to pay its debts, by merely issuing its capital stock to the selling corporation, leaving it no property within the State which can be subjected to the payment of its debts, is bound to satisfy such debts; it becomes a trustee for the creditors of the selling corporation to the extent of the assets so purchased. The decision in the *Brown case* should there-

fore be so limited by the circumstances of that case as not to impair this statement of the general rule.   I think that the Courts mentioned have not been advertent to the differentiating circumstances of the *Brown case* and of the case at bar.   The question, however, is concluded by the decision in the *Brown case,* unless this Court as now organized is prepared to overrule it, which it is not.

See, also, *Harbison v. McFarland,* 156 Ky., 44; 160 S. W., 798; *Otis v. Ohio Mines,* 15 Ariz., 264; 138 P., 777; *Hurd v. New York, etc., Laundry Co.,* 167 N. Y., 89; 60 N. E., 327; *Peters v. Ex. Co.* (Mo. App.), 236 S. W., 100; *Northern Pac. R. Co. v. Boyd,* 228 U. S., 482; 33 S. Ct., 554; 57 L. Ed., 931; *Bank v. Esau,* 74 Okl., 45; 176 P., 514; *Auglaize Co. v. Hinton,* 100 Ohio St., 505; 126 N. E., 881; *Chicago, I. & S. R. Co. v. Taylor,* 183 Ind., 240; 108 N. E., 1; *Love v. Bracamonte* (Ariz.), 240 P., 351; *Jackson v. Knights,* 101 Kan., 383; 167 P., 1046.

As demonstrated in the opinion of Mr. Justice Marion in the *Brown case, that of Brabham v. Exp. Co.,* 124 S. C., 157; 117 S. E., 368, is not in conflict with the conclusions arrived at in the *Brown case.*   Inasmuch as where the new company is held to have assumed the debts of the old company, it is held that that assumption extends only to the value of the assets of the old company acquired by the new, as a trustee, the question might arise whether the action of the creditor should not be in equity and not at law.   *Luedecke v. Cabinet Co.,* 140 Iowa, 223; 118 N. W., 456; 32 L. R. A. (N. S.), 616.   As may be observed, the thread which runs through the warp and woof of all cases holding the new corporation liable for the debts of the old is a species of high finance, in fraud of the rights of the creditors.   How the old companies involved here can be suspected of machination in entering into an arrangement which they did not desire but were compelled by the vis major to enter into is beyond my comprehension.

*The Second Proposition.*—Conceding that there was some evidence tending to show that the American Railway Express Company, expressly or impliedly, assumed the outstanding obligations and liabilities of the Southern Express Company, the fact that the verdicts exonerated the Southern Express Company from liability on account of the delicts alleged against it in the complaint, and charged the American Railway Express Company alone, constitutes in law an exoneration of the latter company; the judgment should therefore be reversed on this account. It must not be lost sight of that this action was first instituted against the Southern Express Company. That company moved to have the service of the summons and complaint set aside upon the ground that it no longer had an agent, or was transacting any business in this State. The motion was resisted by the plaintiff, and the Southern Company was held in the case, by the decision of the lower Court, affirmed by this Court. The plaintiff then moved for an amendment, not substituting the American Company as a party defendant in the place of the Southern, but making the American *an additional party defendant,* which motion was granted over the protest of both companies.

The case then came on for trial under the complaint which alleged causes of action against both companies; that the Southern Company had breached its several transportation contracts by collecting the C. O. D. bills and not accounting for them, thereby subjecting itself to a suit for the recovery of the collections and for the penalties under the Statute; and that the American Company was responsible to the plaintiff for all that the Southern Company owed it, upon the ground that the connection of the American Company with the matter constituted an assumption of all of the liabilities of the Southern Company. It is clear therefore that, conceding such assumption, the liability of the American Company necessarily depends upon the establishment of

a liability on the part of the Southern; by the very terms of the complaint the American Company is not liable upon its assumption, unless the Southern is found liable; the liability of the American is secondary; but if primary it is conditioned upon the liability of the Southern. The verdict was against the American Company *alone;* the Southern was exonerated; hence the liability of the Southern, upon which the liability of the American was predicated, is judicially determined not to have existed, and the verdict against the American Company is without legal foundation.

It is unquestionably true that if the American Company assumed the liabilities of the Southern, it was not necessary to sue both of them; the plaintiff might have sued the American alone; but it did not do so, and vigorously opposed the proposition to leave the Southern out of the case. Having prevailed in this opposition, and the jury having exonerated the Southern from liability, there is no escape from the conclusion that the American has also been exonerated.

It has been consistently held by this Court in the following cases that where an action is brought against both master and servant, based solely upon the *negligence* of the servant and the consequent imputed *liability* of the master, a verdict against the master alone, exonerating the servant, will not be allowed to stand, as being logically and legally without foundation: *Sparks v. Atlantic Coastline R. Co.,* 104 S. C., 266; 88 S. E., 739; *Jones v. Southern R. Co.,* 106 S. C., 21; 90 S. E., 183; *Spigener v. Seaboard Air Line R. Co.,* 111 S. C., 405; 98 S. E., 330; *Beauchamp v. Winnsboro R. Co.,* 113 S. C., 527; 101 S. E., 856; *Howell v. Southern R. Co.,* 114 S. C., 21; 102 S. E., 856; *Durst v. Southern R. Co.,* 130 S. C., 165; 125 S. E., 651; *Jenkins v. Southern R. Co.,* 130 S. C., 180; 125 S. E., 912.

The same principle is applied in the case of principal and agent: *Rookard v. Atlantic & C. Air Line R. Co.,* 84 S. C., 190; 65 S. E., 1047; 27 L. R. A. (N. S.), 435; 137 Am.

St. Rep., 839; *Callahan v. Graves,* 37 Okl., 503; 132 P., 474; 46 L. R. A. (N. S.), 350. It would seem that the same principle would apply in the case of obligor and guarantor. It is generally held that it applies in the case of principal and surety. Note 5 A. L. R., 594.

In the case of lessor and lessee this Court has applied the same principle, where a judgment in favor of the lessor has been held to bar an action against the lessee based upon the negligence of the lessor.

In *Jenkins v. Atlantic Coast Line R. Co.,* 89 S. C., 408; 71 S. E., 1010, the plaintiff first sued the lessor company for damages on account of a personal injury while a passenger on a train operated by a lessee company. Judgment in favor of the lessor company was rendered. Thereafter the plaintiff brought a second action upon the same cause of action against the lessee company. The defendant pleaded the judgment in favor of the lessor company in bar of the second action. The plea was sustained by this Court:

"As the liability of the C. N. & L. [the lessor company, first sued] is predicated upon that of the defendant [the lessee company, held to have been the agent of the lessor company], and as it would be liable for anything for which the defendant is liable, in respect to the matter complained of, the logical conclusion necessarily is that if the C. N. & L. [lessor], is not liable, the defendant is not. Now, as between the plaintiff and C. N. & L., it has been conclusively adjudicated that the C. N. & L. is not liable. Therefore the defendant is not, and the former judgment is a bar to this action."

That case is direct authority for the proposition that a judgment in favor of a master or principal is *res adjudicata* in a subsequent suit against the servant or agent based upon the identical cause of action upon which the principal or master was first sought to be held. The converse of that proposition is equally true, as has been shown.

The Court further said:

"In *Logan's case* [82 S. C., 522; 64 S. E., 515], and also in *Rookard's case,* 84 S. C., 190; 65 S. E., 1047 [27 L. R. A. (N. S.), 435; 137 Am. St. Rep., 839], it is stated that a judgment on the merits in favor of a lessee railroad company [the agent of the lessor company], would bar an action against the lessor for the same cause, because the liability of the lessor is predicated upon that of the lessee. In other words, if the operating company, the one that actually does the injury, is held not to be liable, it follows that the lessor, upon whom the law imposes liability only for the acts of the lessee, cannot be liable."

In the case at bar it is not contended that there is the slightest evidence of an *express* assumption by the American Railway Express Company of the outstanding obligations of the Southern Express Company; the contention is, as disclosed in the amendment of the complaint, that there is an *implied* assumption arising out of the facts that the American Company bought out the Southern with knowledge of its outstanding obligations, with knowledge that it was disposing of all of its property except treasury assets and contemplated going out of business and of winding up its affairs and liquidating. This as clearly demonstrated in the *Brown case* was not sufficient; but concede that it was, at best it amounted to the implied assumption of what the Southern owed. As between the two companies the American Company may be considered the primary obligor, but as between the claimant and the two companies the Southern had not altered its position as the primary obligor, and in analogy to the instance of secondary liability above cited, it is inevitable that the exoneration of the primary obligor must be held to have exonerated the secondary.

Reverting to the necessary elements for charging the buying corporation with the debts of the selling, set forth in the *Brown case,* it is interesting to note that whatever

may have become of the other constituent companies under the provision in the contract above quoted, it appears that after the emergency had passed the Southern Express Company, still alive, attempted to take advantage of that provision, and were met with the information that the Southern Railway Company over whose lines it had been operating under the contracts which had been canceled, had entered into contracts with another express company; and though in a position to resume operations were unable to do so without fault upon its part. So much for the alleged consolidation and merger of the Southern Express Company with the American Company and its going out of business.

Let the amended complaint, the answer of the defendant American Railway Express Company, and the opinion of the Interstate Commerce Commission, appendix to respondent's brief, be incorporated in the report of the case. *

The judgment of this Court should be that the judgment of the County Court in each of the four actions herein be reversed and that the cases be remanded to that Court that judgments may be entered therein in favor of the defendant under Rule 27.

MR. ACTING ASSOCIATE JUSTICE PURDY (dissenting) : The liability of an express company taking over the assets of other companies, for claims against the constituent companies arising before the consolidation, is no longer an open question. *Brabham v. Express Co.,* 124 S. C., 157; 117 S. E., 368. The fact that the operating company agrees to adjust the claim does not alter the situation; it is doing only that which the law would compel it to do.

In the case now under consideration, such *was* the liability of the appellant. Had the Southern Express Company been eliminated, and had the action proceeded against the appellant alone, as was done in the *Brabham case,* a case presenting an entirely different aspect would now be before

---

* See appendix in this volume for amended complaint and answer.

this Court. The plaintiff, respondent, sought to hold both companies liable, and the action on the assumption that both were liable was most natural. Any attorney deeming *two* parties liable, is entirely warranted in trying to enforce the claim against both, so that there is not any basis for a criticism in maintaining the action against both companies —the failure was on the part of the jury.

The jury could not have found a verdict against the appellant without coming to the conclusion that its codefendant was liable. Evidently they took the view that the appellant having received the assets, should meet the liabilities of the Southern Express Company, So we say, judging from the finding of the jury, *both companies were liable.* Not finding against the Southern Express Company is just the result of a jury trial, where jurors in attempting to do justice go wide of the mark as to the issues involved and in applying the facts to the law; and in failing to find against one, have released the other. To hold otherwise would, in my opinion be going contrary to the opinions of this Court, often expressed, as will be seen by reference to the cases referred to in the opinion of Mr. Justice Cothran.

No case has been cited to change the rule that where the offending party has been released, or acquitted, another cannot be held liable for an *imputed* act. In this case, as before suggested, had the action been against the appellant *alone,* the verdict and judgment must have stood. And, although, there was as a matter of law, an assumed liability *when the trial commenced,* a verdict against the appellant *alone,* relieved the appellant of this liability. The case of this appellant against Kentucky, recently decided and cited in the controlling opinion, with great deference, we say, is wide of deciding this point; nor is the case of the *American Ry. Exp. Co. v. Kentucky,* 190 Ky., 636; 228 S. W., 433; 30 A. L. R., 543, helpful to this case for, in that case the Adams Express Company, whose assets had been taken over, had

been sued to judgment on claims against it, and afterwards suits were brought against American Railway Express Company. Quite different from *this case.* Here, the Southern Express Company, the real wrongdoer, was sued, and, by the verdict of the jury was held *not liable.* The same result follows as if a principal and surety were sued together and a verdict given against the *surety only.* Would any one then contend that the surety could be held liable for a debt which the jury had found that the principal did not owe? Or, take this case. So far as the record discloses, the appellant has paid the Southern Express Company for all it got from that company. If the judgments for these claims be paid by the appellant, and it should sue the Southern Express Company, or seek to enforce this judgment against it, would it not be met with the answer, "This company owes you nothing; it has been released by a jury on these claims." But a majority of the members of the Court have held that the appellant must pay the claims. Manifestly, from our standpoint the appellant *before the verdict was rendered,* was liable to pay the claims; and, our objection to the result of the finding of a majority of the Court, is not that the appellant *ought not to have been held liable,* but that, having by all of the previous decisions of this Court, been released by the failure to hold the Southern Express Company liable, it is better to follow what I conceive to be the settled principles governing such cases, than to give relief in an individual case. In expressing these views I do not wish to be understood as desiring to depart from the principles announced by this Court in holding a corporation purchasing the assets of another corporation liable for the claims against that corporation, as is so forcibly expressed by the present Chief Justice in *Brabham v. Express Co.,* 124 S. C., 157; 117 S. E., 368.

For the foregoing reasons, I dissent from the controlling opinion in this case.