### 10581

### TERRY PACKING CO. v. SOUTHERN EXPRESS CO.

#### (118 S. E. 628)

#### (Four Cases)

CORPORATIONS—SERVICE ON FOREIGN CORPORATION HELD VALID, THOUGH IT HAD WITHDRAWN FROM STATE.—Where the summons in an action against a foreign corporation was served in February, 1920, by leaving it on the premises designated in the last annual statement, filed February 2, 1918, as the place at which papers may be served, and on March 6, 1920, defendant filed with the secretary of state an application for a withdrawal, *held,* that the service was valid, though defendant had withdrawn from, and was not doing business within, the state.

Before WHALEY, J., County Court, Richland, April, 1920. Affirmed.

Action by Terry Packing Co. against Southern Express Co. From an order refusing to set aside the service of the summons, the defendant appeals.

The order of Judge Whaley, referred to in the opinion, follows:

Plaintiff commenced his actions, four in number, against the defendant, upon complaints alleging that the plaintiff is a corporation organized under the laws of South Carolina, having its principal place of business at Columbia, in said State, with branch places of business, one in Charleston under the name of Terry Fish Company, and one in Columbia under the name of Columbia Fish & Ice Company; that the defendant is a corporation organized under the laws of the State of Georgia and domesticated under the

---

NOTE: On revocation by foreign corporation of appointment of attorney or agent to receive service of process see note in 30 L. R. A. (N. S.), 678.

Writ of error dismissed, 260 U. S. 707.

laws of South Carolina, and in and by its written stipulation or declaration filed in the office of the Secretary of State of South Carolina, February 2, 1918, 1114 Lady Street, Columbia, S. C., was designated by the defendant as the place of location of said defendant in South Carolina, at which all legal papers may be served, which declaration has not been revoked, and at the times mentioned in the complaints the defendant engaged in business in South Carolina as a common carrier for hire.  All of the causes of action are based upon C. O. D. shipments received by defendant from plaintiff at Columbia and at Charleston prior to July 1, 1918.  The summons and complaints were served on the defendant, Southern Express Company, by leaving copies thereof on the premises in the City of Columbia known as 1114 Lady Street.

The defendant, through its counsel, appearing solely for the purpose of making the motion, moved to set aside the service of the summons in all four actions supporting the motion by the affidavit of W. M. Barrett, president of Southern Express Company, setting forth, among other things, that Southern Express Company has not maintained an office at 1114 Lady Street, Columbia, S. C., or elsewhere in South Carolina since July 1, 1918, and that it has not engaged in business in South Carolina or had any agents therein since that time, and made reference to the proclamation of the President of the United States and the articles of incorporation of American Railway Express Company.

The plaintiff appeared with counsel and objected to such an order and maintained that the service was valid and filed written objections as follows:  "That the provisions of law relating to foreign corporations as embodied in the Code of 1912, and acts amendatory thereof, and especially Chapter 44 of Volume 1, Code of Laws South Carolina, were enacted to protect the citizens of South Carolina on transactions had within this State with foreign corporations by requiring foreign corporations to become domesticated under its laws

and to prevent such corporations from putting themselves beyond the reach of the Courts of this State and it appearing: (1) That defendant did domesticate under the laws of South Carolina and engaged in business therein as a common carrier for hire. (2) That the complaints herein are (a) upon causes of action which arose while defendant was engaged in business in South Carolina, and prior to government control, (b) upon transactions which took place in the State of South Carolina, and (c) with a citizen of South Carolina. (3) That the last place designated by defendant as the place in this State at which all legal papers may be served is 1114 Lady Street, Columbia, S. C. Therefore, until defendant has discharged its liabilities arising out of its transactions in South Carolina and while doing business there and with the citizens of that State, it cannot depart therefrom and require that it be sued in another State on such causes of action, but the Courts of South Carolina have jurisdiction over defendant for the purpose of hearing and determining actions arising out of such transactions, and having been served in the manner provided by statute and at the place designated by defendant the service should not be set aside."

The objections were supported by a certificate from the Secretary of State, setting forth that, by its declaration filed in his office February 2, 1918, the defendant designated 1114 Lady Street, Columbia, S. C., as the place in this State at which all legal papers may be served on it and a further certificate from the Secretary of State to the effect that on the 9th day of August, 1894, defendant in compliance with an Act of the General Assembly approved December 20, 1893, and now Chapter 44 of Volume 1 of Code of 1912, filed its declaration designating its principal place of business in South Carolina and the agent of the company at that point, together with certified copies of its charter and articles of association, and that annual statements as required by said act were filed by defendant for the years 1916, 1917, and

1918, among others, and the Secretary of State further certified that application for withdrawal was filed by Southern Express Company March 6, 1920.   There was also filed by plaintiff the affidavit of its president, which was in effect a verification of the complaints.

It is not disputed that the transactions out of which the causes of action arose were had between plaintiff and defendant (a) within the State of South Carolina, (b) while defendant was actively engaged in business in South Carolina, and (c) with a citizen and resident of South Carolina.   Nor is it disputed that defendant, a foreign corporation, had properly domesticated itself under the laws of South Carolina, and was operating in South Carolina under the license so granted it at the time the C. O. D. shipments in question were delivered to it.   At the time these suits were commenced, however, defendant was not doing business in this State and had no agents therein.

The issue is: Was such constructive service valid?   It will be remembered that service was made by leaving the summons at the place of business designated by defendant pursuant to Section 2665 of the Code as follows:

"Sec. 2665.—*Stipulation to be filed—Location—Service of Legal Papers.*—Any and every such foreign corporation owning property or doing business in this State on the 1st day of July, 1894, shall within sixty days after the 1st day of July, 1894, and any and every such foreign corporation which shall acquire property or commence to do business in this State after the 1st day of July, 1894, shall, within sixty days after so acquiring any property or commencing to do business in this State, file in the Secretary of State's office in this State a written stipulation or declaration, in due form, designating some place within this State as the principal place of business or place of location of said corporation in this State at which all legal papers may be served on said corporation by the delivery of the same to any officer, agent or employee of said corporation found thereon; or if none

such be found thereon, then by leaving copies of the same on the premises, and that such services shall have like force and effect in all respects as service upon citizens of this State found within the limits of the same."

The latest decision of the Supreme Court of the United States is that of *Chipman v. Jeffrey,* 251 U. S., 373; 40 Sup. Ct., 172; 64 L. Ed., 314, in which the Court considers a Statute of New York substantially the same as ours. The Court pointed out with great particularity that the contract was made in Wisconsin and was not to be performed in New York. The domestication Statutes are intended as a protection against transactions had within its borders. The Court set aside the service in the Chipman Case, holding that in order to bind a foreign corporation by such constructive service, under a Statute which fails to provide as a condition precedent to doing business in that State, that the foreign corporation must agree that service on the agent would be binding after it left the State, the transaction must have been one which took place in New York. That view does not conflict with the contention of the plaintiff in this action. It would be a very hard rule to require a defendant to defend in a forum other than that in which its home office is located, on a contract made in the home office or in a forum in which the contract was not to be performed, even though it did have an agent there whose power could not be revoked and that was the ruling of the Court in *Chipman v. Jeffrey.*

The plain purpose of Chapter 14 was to provide a means whereby the Courts of this State would continue to have jurisdiction of all causes of action arising out of transactions had within the State between its citizens and a foreign corporation, which, after having created these obligations, suddenly withdraws from the State and removes its property. So long as a foreign corporation is doing business in the State and has property therein, jurisdiction over it may be obtained by serving its agents or by attachment of its property, and resort to the domestication Statute is not neces-

sary to gain jurisdiction.   It has been held that Statutes of
this nature do not, when acted upon by foreign corporations,
constitute a contract between the State and such foreign cor-
porations, which is impaired by subsequent legislation.  They
serve to create  what may be termed a Status.   *Conn. Mut.
v. Spratley,* 172 U. S., 602; 19 Sup., Ct., 308; 43 L. Ed., 569.

The case of *Mutual Reserve Fund Life Association v.
Phelps* 190 U. S. 147; 23 Sup. Ct., 707; 47 L. Ed., 987, is
a case quite similar  arising under a similar Statute of the
State of Kentucky.   In 1893 the Mutual Reserve Associa-
tion domesticated in Kentucky and filed its stipulation con-
senting for the insurance commissioner to accept service of
process.   On October 10, 1899, the commissioner revoked
the company's license.   On February 28, 1900, Phelps com-
menced his action in the Circuit Court of Jefferson County,
Ky., against the association, alleging that in 1885 the defend-
ant issued him a policy of insurance and that there had been
a breach of the contract.   A summons was issued and served
on  the  insurance  commissioner.   The  defendant  ap-
peared specially and moved to quash the service.   The mo-
tion was heard on affidavits and overruled.   The defendant
taking no further action, judgment was entered by default.
Subsequently there was an application for a receiver a *nulla
bona* return having been made.   In discussing the case the
United States Supreme Court quoted from and approved of
the decision in *Home Benefit Society v. Muehl,* 109 Ky.,
479; 59 S. W., 520; 22 Ky. Law Rep., 1378, 1379, as fol-
lows:   "There is no need of the right to serve process upon
the insurance  commissioner  so  long  as  the  company  has
agents in the State, and we think the purpose of the section
was to provide a means of obtaining service of process upon
foreign companies which no longer had agents in the State
upon whom process might be served in suits on contracts
made in this State."   The language by which it approved of
that decision is the following:   "As an original question
and independently of any expression on the part of the Court

of Appeals we are of opinion that such is the true construction."

The plaintiff in that case was a citizen of Kentucky, and the cause of action arose out of a transaction had between plaintiff and defendant while the latter was carrying on business in the State of Kentucky. In course of discussion the United States Supreme Court remarked in substance as follows: "It was to prevent foreign corporations from putting themselves beyond the reach of the courts of the State in which they were doing business that Statutes were passed requiring such corporations to consent to service of process being made upon a permanent officer of the State, and declared that it would be obviously thwarting the purpose of such legislation if after making a multitude of contracts with the citizens of the State, a foreign corporation shall be enabled, by simply withdrawing its authority given to such officer, to compel all parties who had done business with it to seek the Courts of its own State for the enforcement of their claims." The conclusion of the United States Supreme Court was as follows: "We conclude, therefore, that the service of the summons on the insurance commissioner was sufficient to bring the association into the State Court, and, there being nothing else to impeach the judgment, it must be considered as valid."

The case of *Hunter v. Mutual Reserve Co.,* 218 U. S., 573; 31 Sup. Ct., 127; 54 L. Ed., 1155; 30 L. R. A. (N. S.), 687, annotated at pages 678-681, 30 L. R. A. (N. S.), considers the domestication statute of North Carolina. Although it was conceded by the insurance company before the United States Supreme Court that the judgment on the contract made in North Carolina was valid, and only contested the contracts made elsewhere, the decision is filled with remarks pertinent to the issue here and sustains the contention of the plaintiff in the actions before this Court.

One of the most lucid opinions, involving a statute similar to ours, and one which discusses the question from both

viewpoints, with particular reference to the decisions of the United States Supreme Court, is that of *Groel v. United Electric Co.*, 69 N. J. Eq., 397; 60 Atl. 822.   The complainant in that case was a citizen of New Jersey, and the United Gas Improvement Company, which will be called defendant for convenience, was a corporation of Pennsylvania. A writ *sub ad res* issued October 15, 1903, directed to defendant, and the sheriff made return of service on defendant on October 16, 1903, by delivering copies to R. W. Elliott, statutory agent.   The bill was upon a transaction had in New Jersey.   The issue raised a plea to the jurisdiction of the Courts of New Jersey.   The defendant alleged that it was not a resident or citizen of New Jersey or existing as a body politic under its laws; that it had no office, agent or agency, or place of business in New Jersey, and had had none since 1st of November, 1899; that on July 10, 1894, it had filed in the department of State of New Jersey a copy of its charter, together with a statement designating R. W. Elliott as its agent and 109 Montgomery Street as its place of service; that it continued in business in New Jersey until November 1, 1899, at which time it discontinued, paid its obligations, and closed its office, and had done no business in New Jersey, and had had no agent or office therein since; that September 9, 1903, the directors at a meeting, in Philadelphia, passed a resolution whereby they revoked in writing the agency of Elliott and served copies of the same on the Secretary of State of New Jersey and on Elliott; and that Elliott was not an officer or agent of defendant or in any manner connected with it.

The New Jersey Statute provided that no foreign corporation should transact business therein until it had filed in the department of state copies of its charter, etc., and a statement setting forth among other things the character of the business in which it was engaged and that which it proposed to do in New Jersey, and designated a natural person who was a resident of that State or a corporation of that State

as its agent upon whom legal process against such foreign corporation might be served, and that the agency so designated should continue of force until revoked in writing, or some other citizen or corporation was substituted therefor, and in the event the citizen so designated died or removed, or such corporation became disqualified, and a substitute was not named in 30 days, process could be served on the Secretary of State. The questions raised and the answers of the Court, after elaborate discussion, are given below in convenient form, the language of the Court being used:

The defendant disputes the binding effect upon it of service upon Elliott:

(1) That jurisdiction of foreign corporations may only "be enforced by the Courts of New Jersey which service is made upon an officer or agent specified by law when the corporation is actually engaged in business in New Jersey." Answer to (1) : I therefore conclude that the Statute "applies to the case at bar, and for this cause of action, which arose in New Jersey while the defendant corporation was transacting business here under a license obtained under the Statute, if the Court can enforce its jurisdiction by process served upon the designated agent of the defendant corporation, whether the corporation is actually engaged in business here at the time of service or not."

(2) That if the Court construed the Statute to mean "that a foreign corporation is suable here for a cause of action arising here, by service upon the designated agent, after it has ceased the actual transaction of business here, then such Statute contravenes the Fourteenth Amendment of the United States Constitution." Answer to (2) : I conclude, therefore, that the Acts "of the General Assembly of New Jersey in question are valid, constitutional, and enforceable."

(3) That, if it be held that the Statute of New Jersey "authorizes service upon a designated agent of a foreign corporation, after the corporation has ceased to do business

here, the cause of action must be one which arose out of business which the company specified it would carry on in the State." Answer to (3) : I therefore conclude that for this "cause of action it is amenable to the jurisdiction of the Court, if process is served in accordance with the Statute."

(4) That, assuming that defendant was subject to be "sued in New Jersey by process served on its designated agent, Elliott, up to the 10th day of September, 1903, it was not suable thereafter because on that date it revoked the agency of Elliott." Answer to (4) : I conclude that under the Statute the "defendant had not the power to revoke the agency it had created as against those in whose favor causes of action arose within the State of New Jersey while the defendant was transacting business there, and that its efforts in that direction were futile."

It is true that Section 2665 is not as plain as it might be. But its purpose, in the light of the circumstances surrounding its enactment, must determine its effect. Section 2664 permits foreign corporations to locate and carry on business here, and confers upon them the same powers that are conferred upon domestic corporations of the same class, "subject, nevertheless, to the terms and conditions in this chapter hereafter set forth," and the very first of these is that they must designate (a) some place of business or (b) place of location, in this State, at which all legal papers may be served by etc. "Place" is the word on which emphasis is put and denotes permanency. The matter of the officer, agent, or employee found on the premises is of secondary importance, and an alternative is provided in case such a person is not found there. The General Assembly had in mind, of course, that the naming of a natural person would not be sufficient, for in the event of the death of such person or his removal from the State the object they sought to obtain would be defeated. Nor would they place it within the power of the foreign corporation to defeat its purpose. The naming of

a place and the additional provisions with reference to the delivering of the papers to an officer, agent, or employee, or, if none be found, the leaving of the same on the premises, carries with it the idea of the presence of an agent there at all times, actually or constructively.

In a word, the purpose of Chapter 14 is to protect the citizens of this State against foreign corporations on transactions had within the State, and its effect is to provide an effective means of maintaining jurisdiction under such circumstances.   Our Statute is of greater force than many of those considered in the cases cited above.   I conclude, therefore, that the service of the summons on the defendant in each of the four cases above entitled by leaving copies of the same on the premises in Columbia know as 1114 Lady Street was valid, and that this Court has jurisdiction to hear and determine the causes of action alleged therein.

It is therefore ordered that the motion to set aside the service of the summons in the four cases entitled as above be, and the same hereby is, refused.

*Messrs. Barron, McKay, Frierson & McCants,* for appellant, cite: *Personal judgment cannot be rendered unless party voluntarily appear or is found within the jurisdiction of the Court so as to be served with process:* 95 U. S., 714; 24 L. Ed., 565.   *Defendant may appear specially to contest validity of service of process:* 237 U. S., 189.   *To support jurisdiction of State Court to render a personal judgment against a foreign corporation it is essential that it shall appear that the corporation was engaged in business at the time of commencement of the action:* 106 U. S., 350; 243 U. S., 264, 61 L. Ed., 710; Adv. Ops. (U. S.), No. 7, p. 205; 220 N. Y., 259; 205 U. S., 530.   *Cases cited by County Judge were under Statutes similar to* Sec. 2705 and not Sec. 2665; 1 Civil Code 1912.   *Distinction between jurisdiction conferred by consent or contract and jurisdiction claimed by virtue of Statute:* Law Reps. 9 Exch. 345.

*Mr. Edw. L. Craig,* for respondent, cites:  Sec. 2665, 1 Civ. Code 1912, construed:  61 S. C., 361; 30 L. R. A. (N. S.), 687; Ibid., 678. *Sec. 2665 requires the designation of a place of service not to name an agent:* 61 S. C., 381 citing 53 S. C., 106. *State may impose on foreign corporation conditions not repugnant to the Constitution and laws of the U. S.;* 61 S. C., 381; Thompson Corps. Vol. VI. p. 6263, Sec. 7887; also Secs. 7884, 7888, 7889. *Purpose of such legislation:* 30 L. R. A. (N. S.), 681; *and such legislation creates a status;* 69 N. J. Eq., 397; 60 Atl., 827. *And such status continues as long as there are Liabilities arising out of transactions in the State:* 190 U. S., 157; 47 L. Ed., 994; 69 N. J. Eq., 397; 60 Atl., 827.

March 12, 1921.

The opinion of the Court was delivered by MR JUSTICE FRASER.

The appellant is a foreign corporation, formerly doing business in this State.  This action was commenced by the service of the summons in February, 1920.  The date of shipment is November, 1917.  The last annual statement was filed on the 2d of February 1918.  On the 6th of March, 1920, the defendant filed with the Secretary of State an application for withdrawal from this State.  The last annual statement "designated 1114 Lady Street in the City of Columbia, South Carolina, as the place in said State at which all legal papers may be served."  The plaintiff not being able to find an agent of the defendant, left the summons on the premises, as allowed by the Statute.  The question in this case arises on a motion to set aside the service on the ground that the defendant had withdrawn from the State, and, as it had no agent and was not doing business in this State, it could not be sued in this State.

The defendant, a foreign corporation, came into this State to transact business here, and consented to submit to the jurisdiction of the courts of this State by the method adopt-

ed in this case.  Its application for withdrawal was not filed until after the service in this case was complete.  Since the service of the summons in this case, it has recognized the validity of the Statute under which it was sued, and it is too late to deny the jurisdiction of the Courts of this State in these cases.  Much has been said about the American Railway Express Company, but it is only confusing.  It has nothing to do with this case.

The trial Judge refused to set aside the service, and his ruling is affirmed.  Let the order of Judge Whaley be re-. ported.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and COTHRAN concur.