## Wytheville.

THE DUPONT ENGINEERING COMPANY v. JOHN P. HARVEY CONSTRUCTION COMPANY.

June 18, 1931.

Present, Prentis, C. J., and Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Plummer & Bohannan* and *Willis W. Bohannan,* for the plaintiff in error.

*A. W. Patterson* and *Jas. E. Palmer,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The DuPont Engineering Company claims to be aggrieved by a judgment of $2,000.00, with interest and costs, rendered against it by the trial court in a certain action at law wherein the John P. Harvey Construction Company was the plaintiff and The DuPont Engineering Company was the defendant. The parties will be referred to as plaintiff and defendant, having reference to their respective positions as such in the trial court.

The case originated in a notice of motion for judgment filed

by John P. Harvey Construction Company, the plaintiff, against The DuPont Engineering Company, the defendant, whereby it was claimed that the defendant had breached a certain contract for the rental of a steam shovel from the plaintiff. A verdict was obtained for $2,000.00 damages, which was approved by the trial court and it is of this action of the court that the defendant is now complaining.

In the notice of motion for judgment it was alleged that the plaintiff agreed to lease its steam shovel to the defendant for $200.00 per week, provided the defendant would return it to the plaintiff in the same condition of repair as it was when received by the defendant; that the agent of the plaintiff and the agent of the defendant inspected the shovel before it was delivered to the defendant and it was then in good condition and repair; that the defendant agreed to lease the shovel under the conditions named, and accepted it on February 26, 1929, agreeing to pay for its use $200.00 per week, and further agreed to return it to the plaintiff in as good state of repair as it was on February 26th, when inspected by the agents of the respective parties and delivered to the defendant; that through the negligence and carelessness of the defendant's agents and employees the shovel was broken and damaged, and after it had been damaged the defendant notified the plaintiff that it desired to use it no longer; that the plaintiff then had the shovel inspected and found it broken and out of repair; that the defendant refused to repair it, and that on account of the negligence of the defendant's agents and employees the plaintiff had been deprived of the use of the shovel, and the estimated cost of its repair was $1,900.00.

The defendant filed its two special pleas in abatement. The first plea is as follows: "The said defendant comes and says that this court ought not to have or take any further cognizance of the action aforesaid of the said plaintiff, because the said defendant says that it is a foreign corporation, incorporated under the laws of the State of Delaware; that before

the attempted service of the notice of motion in this case, to-wit, on the 20th day of May, 1929, the said defendant, desiring to cease doing business in the State of Virginia, did so, and did then surrender to the State Corporation Commission the original certificate of authority to transact business in the State of Virginia and did pay all taxes, fees and charges then due the State, and did then withdraw from the State of Virginia; that it has not, since its said withdrawal from the State of Virginia, done any business within the said State; that when the copy of the notice of motion was served on the Secretary of the Commonwealth of Virginia, and as such the Secretary of the Commonwealth, to-wit, on the 29th day of May, 1929, the said defendant was not doing business within the State of Virginia; that it had ceased to do business within the State of Virginia; that the service of the copy of the said notice of motion upon the said Secretary of the Commonwealth was invalid and void, and that the said defendant is no longer amenable to the jurisdiction of any court within the State of Virginia and cannot be sued in said State."

The second plea is as follows: "The said defendant comes and says that this court ought not to have or take any further cognizance of the action aforesaid of the said plaintiff, because the said defendant says that it was, until its dissolution hereinafter alleged, a foreign corporation, incorporated under the laws of the State of Delaware; that before the institution of this action and the attempted service of process upon it, to-wit, on the 30th day of April, 1929, it was legally dissolved; that, when the copy of the notice of motion was served on the Secretary of the Commonwealth of Virginia, and as such the Secretary of the Commonwealth, to-wit, on the 29th day of May, 1929, the said defendant had ceased to do business within the State of Virginia, and had withdrawn from the State, and had surrendered its original certificate of authority to transact business within the State, and had been lawfully dissolved, so that .

the said defendant was not then, and is not now, amenable to the jurisdiction of any court within the State of Virginia."

The plaintiff moved the court to strike out the two pleas in abatement and for the purpose of a decision of the court on the motion it was stipulated between counsel for the respective parties that the facts set forth in said pleas would be taken as true.

The court sustained the plaintiff's motion and the two pleas were stricken out. The court held that: (1) The allegations in the pleadings make the case of an unperformed contract; (2) that Code, section 3810, notwithstanding the dissolution of a corporation, keeps it alive for three years, for the purpose (among others) of being sued; (3) that, although the corporation has attempted to revoke the authority of its statutory agent, such revocation is inoperative as long as it has unperformed contracts in the State, and (4) that, in the absence of proof to the contrary, the laws of Delaware (the home of the defendant company) are presumed to be the same as the laws of Virginia.

Later, the defendant filed its plea of not guilty and denied that it owed the plaintiff anything. It filed its grounds of defense and claimed that it never agreed to rent the shovel from the plaintiff; that it owed the plaintiff no rental; that it was in no way responsible for the damage to the shovel and was guilty of no negligence in connection therewith; that the shovel was not in its custody or control on or after February 26, 1929, and that no such contract of lease such as is alleged in the notice filed in this action was ever made by the defendant.

The case was then tried before a jury in the lower court and the result was a verdict for the plaintiff for $2,000.00, with interest and costs.

A motion was made to set aside the verdict of the jury because it was contrary to the law and evidence. The defendant claimed that the jury had been misdirected and that the court had permitted improper and prejudicial argument of counsel

to the jury. It also asked that the verdict be set aside and judgment be entered in its favor.

The court overruled the motion and entered judgment for the plaintiff.

There are four assignments of error to the action of the trial court in entering judgment for the plaintiff: (1) That the court erred in striking out the two pleas in abatement; (2) in giving an instruction at the request of the plaintiff (which is the only instruction the plaintiff requested), and in refusing to give instruction "C" asked for by the defendant in its original form and amending the instruction and giving it in its amended form; (3) in refusing to set aside the verdict and to grant it a new trial, and (4) in refusing to set aside the verdict and to enter a judgment for the defendant.

In approaching the question presented by the first assignment of error we will consider the substance of the two special pleas in abatement together, that is, that the defendant was a Delaware corporation, domesticated in Virginia, transacted business here, but on May 20, 1929, ceased doing business here, revoked the power of attorney whereby its statutory agent was appointed for the purpose of suits against the corporation, and that it lawfully withdrew from Virginia after complying with our statutory requirements in that respect; and, further, that on April 30, 1929, this corporation surrendered its charter in the State of Delaware, the State of its creation. It is set forth in the pleas that the withdrawal and dissolution took place prior to the time this suit was instituted, the notice having been served on the Secretary of the Commonwealth on May 29, 1929.

The trial court based its decision to strike out the two pleas in abatement, first, upon the authority of the Virginia case of *American Railway Express Co.* v. *Fleishman, Morris & Co.,* 149 Va. 200, 141 S. E. 253, and, secondly, upon the principle that in the absence of any proof of what the law of a sister State is, it will be presumed that it is the same as the *lex fori,*

and that section 3810 of the Code continued the existence of the corporation, for the purposes of suit for three years, notwithstanding its dissolution.

Counsel for the defendant urges that the principles of the *American Railway Express Company* v. *Fleishman Case, supra,* have no application, and that, while it is true, in the absence of any proof of the law of a sister State, it will be presumed that the common law of the sister State and that of the State of Virginia are the same, no such presumption can be indulged in respect to the statutory law of a sister State.

We deem it unnecessary to presume that the law of Delaware, in the absence of proof, is the same as the law of Virginia in respect to continuing the existence of the corporation for a period of three years from its dissolution for the purpose of suits.

The Constitution of Virginia, section 163, provides that: "No foreign corporation shall * * * be permitted to do anything which domestic corporations are prohibited from doing, or be relieved from compliance with any of the requirements made of similar domestic corporations by the Constitution and laws of this State where the same can be made applicable to such foreign corporation without discriminating against it. * * *."

Section 3810 of the Code provides that: "* * * All corporations, whether they expire by their own limitations or are otherwise dissolved, shall nevertheless be continued for such length of time not exceeding three years * * * as may be necessary for the purpose of prosecuting and defending suits by or against them * * *."

Section 3845 of the Code provides that every foreign corporation doing business in Virginia shall, by power of attorney, appoint the Secretary of the Commonwealth its agent, upon whom process shall be served in suits against it.

In 12 R. C. L., p. 113, section 89, is found this language relative to a foreign corporation withdrawing from a State in

which it has been domesticated: "While there are decisions to the effect that in the absence of legislation on the subject, after a foreign corporation has in fact withdrawn from a State and is no longer represented by its designated agent, jurisdiction over the corporation cannot be obtained by service upon him, it is generally held that a foreign corporation, which has been admitted to do business within a State upon the condition that it execute a power of attorney for service of process to a general agent or State officer, cannot, after having designated some person for service of process and carried on business within the State, escape from the jurisdiction of the courts of the State over actions brought by residents thereof with whom it has contracted under the permission to do business therein, by revoking the power of attorney for service of process and ceasing to do business within the State * * *."

In the case of *Frazier* v. *Steel & Tube Co. of America,* 101 W. Va. 327, 132 S. E. page 723, 45 A. L. R. 1442, this is said: "A foreign corporation on coming into this State and engaging in business under authority granted it pursuant to statutes providing therefor, thereby consents to the provision of the statute making the State Auditor its attorney in fact to accept service of process for it, and such consent extends to all actions on contracts made by it with citizens of the State while doing business under such authority, though it may have ceased to do business or have withdrawn from the State prior to the bringing of the action."

There is an excellent note in 45 A. L. R., at page 1447, dealing with the question of service of process upon a statutory agent of a foreign corporation, and it appears from this note that by the great weight of authority, if a statute requires as a condition precedent to the doing of business in the State by a foreign corporation that it shall designate an agent in the State on whom process may be served in actions against it, withdrawal of the corporation from the State does not revoke the authority of the agent to receive service in an action on a

liability arising in the State out of business done by the foreign corporation therein.

This rule was applied in the case of *American Railway Express Co.* v. *Fleishman, et als., supra.*

It is obvious that the purpose of section 163 of the Constitution was to place domesticated foreign corporations on a plane of equality with domestic corporations of like kind. Service of process upon the statutory agent of such foreign corporation, notwithstanding it may have withdrawn from Virginia and surrendered its charter in its home State, is effectual to give jurisdiction to Virginia courts in suits of the kind here involved. Under section 3810 of the Code it may be sued on contracts arising in Virginia while it was doing business here, even after withdrawal or dissolution. To hold otherwise would mean that the State of Virginia confers greater privileges and immunities upon domesticated foreign corporations than it confers upon its own domestic corporations. Such is not the meaning and spirit of section 163 of the Constitution.

When a foreign corporation comes into Virginia and becomes domesticated under our laws for the purpose of doing business here, it necessarily subjects itself to all of the laws of this State applicable to domestic corporations. It is not entitled to enjoy in this State privileges and immunities that are not granted to a domestic corporation.

The State of Virginia has a right to prescribe the condition upon which a foreign corporation may do business within its territory, and, when domesticated, it stands on the same footing as domestic corporations of like kind. When The DuPont Engineering Company, which had been engaged in business here, voluntarily withdrew and its stockholders voluntarily dissolved it, the laws of Virginia applicable to domestic corporations that have been so dissolved are applicable to it. It may have been dissolved in the manner provided by the laws of the State of Delaware, but it will remain subject to the provisions of section 3810 of the Code of Virginia for the same

purposes as domestic corporations·are subject to those pro-
visions.

■ Under section 3810 of the Code, a corporation at dis-
solution is kept alive for a period of three years for the pur-
pose of suing and being sued. The right to sue in order to
settle its business and its liability for causes of actions that
arose against it before dissolution are not lost or destroyed by
dissolution.

A domesticated foreign corporation that incurs liabilities in
this State will not be permitted to escape its just obligations by
merely withdrawing and surrendering its charter and in this
way defeat all of its creditors. The voluntary dissolution of
such corporation does not extinguish obligations due by or to it.

Our conclusion is that the trial court committed no error
when it sustained the plaintiff's motion and struck out the two
special pleas.

On motion of the plaintiff the court gave the jury this in-
struction:

"If the jury believe from the evidence that on or about the
26th day of February, 1929, the defendant rented from the
plaintiff a shovel for use on work at Ampthill, for which
the defendant was to pay the sum of two hundred dollars
($200.00) per week, provided the same was found on inspec-
tion to be in proper condition, and that the said shovel upon
inspection was found to be in proper condition and was in fact
operated by defendant, but later the defendant notified plain-
tiff that it had no further use for it, and that when plaintiff
investigated he found said shovel broken and out of condition,
so that it required for its repair the sum of nineteen hundred
dollars ($1,900.00), then you should find for plaintiff, and
assess its damages at such sum as you think proper under all
the evidence, but in no event to exceed the sum of two thousand
dollars ($2,000.00) claimed in the plaintiff's notice of motion,
unless you further believe from the evidence the damage to the
shovel was caused by the plaintiff or someone acting for it."

The court declined to give the jury the following instruction "C" offered by the defendant:

"The court further instructs the jury if you believe from the evidence that any damage was done to the shovel while it was on the premises on which The DuPont Engineering Company was working, but that such damage was not done by the agents or employees of The DuPont Engineering Company, or by anyone acting under its orders or instructions, then The DuPont Engineering Company is not liable for any such damage which might have been done, and you must find for the defendant as to the claim for damages asserted in the notice of motion."

The foregoing instruction "C" was amended by the court and given over the defendant's objection in the following language:

"The court further instructs the jury if you believe from the evidence that the defendant did not lease the shovel, as claimed by the plaintiff, and further believe from the evidence that damage was done to the shovel while it was on the premises on which The DuPont Engineering Company was working, but that such damage was not done by the agents or employees of The DuPont Engineering Company, or by anyone under its orders or instructions, then The DuPont Engineering Company is not liable for any such damage which might have been done, and you must find for the defendant as to the claim for damages asserted in the notice of motion."

Timely objection was made to the giving of the instruction offered by the plaintiff and proper exception was taken to the amendment of instruction "C" and the refusal of the court to give it in its original form.

The instruction given at the request of the plaintiff was not applicable to its theory or to the evidence.

Adverting briefly to the notice of motion, it is seen that the plaintiff alleged a breach of a contract whereby it was agreed that the defendant would rent the shovel at a stipulated rental

and that it would return the shovel to the plaintiff in as good condition as it was when delivered to the defendant. It was further alleged that the shovel was in good condition when delivered to the defendant and when returned it was not in the same good condition it was in when received by the defendant, but, on the other hand, it was broken and damaged to the extent that it would require the expenditure of approximately $1,900.00 to place it in the same condition it was in when received by the defendant.

The plaintiff also alleged that the shovel was broken and out of repair through the negligence of the defendant's agents and employees.

It is apparent that the plaintiff based its recovery in its notice upon two theories: (1) That there was a breach of contract on the part of the defendant to safely keep and return the shovel to the plaintiff in good repair; (2) that the defendant's agents were negligent in the use of the shovel and thereby had damaged it.

The instruction was intended to apply to the plaintiff's first theory of recovery, but it entirely failed to embrace the alleged agreement of the defendant to return the shovel in equally as good condition as it was in when it was delivered to it. If the jury believed that the defendant did not enter into such an agreement, then there could have been no recovery in this case, because there was no evidence introduced at the trial of any negligence on the part of the defendant's agents. If the defendant entered into the contract and agreed to return the shovel in good condition, as claimed by the plaintiff, then the negligence of the defendant would be immaterial, for such an agreement would bind the defendant and make it responsible in all events for any damage to the shovel, regardless of the question of negligence. The allegations of negligence in the notice may be treated as surplusage and disregarded. The fact that the plaintiff alleged a breach of contract on the one hand and negligence on the other is not assigned as error.

Our conclusion is that inasmuch as the instruction eliminated from the jury's consideration the essential fact, according to the plaintiff's theory, that the agreement required the return of the shovel to the plaintiff in as good condition as it was when delivered to the defendant, it constituted reversible error.

Instruction "C," as amended, instructed the jury that if the defendant had not agreed to lease the shovel, as claimed by the plaintiff, and if it was not damaged by the defendant's agents, then the defendant was not liable. Of course, if there had been no contract of lease, then the plaintiff could only have recovered on the theory of negligence, and there being no evidence of any negligence, the plaintiff could not have recovered at all.

This instruction, as amended, is substantially correct. It was not error to refuse the instruction in its original form because it ignored entirely the contract of lease.

Inasmuch as the case will be reversed on account of the error in giving the instruction offered by the plaintiff, it will not be necessary to discuss the last assignment regarding the alleged improper argument of counsel for the plaintiff. This court has previously expressed itself in numerous cases on this point, and it will serve no good purpose to enter into a discussion of this subject at this time.

The judgment is reversed on account of the error of the trial court in granting the plaintiff's instruction, and the case is remanded for a trial *de novo,* to be had in accordance with the views herein set forth.

*Reversed.*

EPES, J., concurring.

I concur in the conclusions reached in this case. But I base my concurrence in sustaining the court in rejecting the plea setting up the dissolution of the corporation upon these facts: (1) The plea does not allege that its corporate existence had been extinguished for all purposes, or for the purpose of suing

and being sued; and, (2) upon examination of the statute laws of Delaware, I find that the existence of a dissolved corporation is thereby continued for three years from the date of the order of dissolution thereof, for the purpose of suing and being sued. Revised Code of Delaware, section 1954.

The Virginia statute continuing the existence of a dissolved corporation for three years, for the purpose of suing and being sued, applies only to corporations created under the laws of Virginia, and cannot *ex proprio vigore* operate to continue the existence of a corporation created under the laws of Delaware, after its corporate existence has been terminated by the laws of Delaware, even though it has applied for and obtained authority to do business in Virginia; that is, in common parlance, become domesticated in Virginia.

It seems to me that to presume that the statute laws of all other States are the same as those of Virginia, is a very violent presumption, especially so where, as in the case of the law relating to corporations, it is a matter of common knowledge among the legal profession that there is much difference in the statute laws of the several States relating to the subject in question.