16922

CATHERINE S. FOSTER, as Administratrix of the Estate of Florence C. Burroughs, deceased, Appellant, and CLINTON J. BURROUGHS, Appellant, v. H. D. MORRISON and J. M. McMANUS, individually and as partners trading as Mor-Mac Motor Court, and RULANE GAS COMPANY, a corporation, Defendants, of which RULANE GAS COMPANY, a corporation, is Respondent.

(two cases)

(84 S. E. (2d) 344)

150

*Messrs. James P. Mozingo, III, John L. Nettles, Benny R. Greer,* and *Keith A. Gatlin, of Darlington,* and *Bell, Horn, Bradley and Gebhardt,* of Charlotte, N. C., *for Appellants,*

*Messrs. Herbert & Dial,* of Columbia, *for Respondent,*

*Messrs. James P. Mozingo, III, John L. Nettles, Benny R. Greer,* and *Keith A. Gatlin,* of. Darlington, and *Bell, Horn, Bradley and Gebhardt,* of Charlotte, *for Appellants, in reply,*

November 1, 1954.

TAYLOR, Justice.

Where a foreign corporation has complied with the statutory requirements as to the appointment of a process agent, the Supreme Court of the United States has clearly indicated a leaning toward the construction of such statutes where possible, that would exclude from their operation causes of action not arising in the business done by them in the state. *Missouri Pac. Railroad Co. v. Clarendon Boat Oar Co.,* 257 U. S. 533, 42 S. Ct. 210, 66 L. Ed. 354; *Robert Mitchell Furniture Co. v. Selden Breck Const. Co.,* 257 U. S. 213, 42 S. Ct. 84, 66 L. Ed. 201; *Chipman v. Thomas B. Jeffrey Co.,* 251 U. S. 373, 40 S. Ct. 172, 64 L. Ed. 314.

We, therefore, would affirm and report the Order appealed from. Let the Order be reported.

LEGGE, J., and BRUCE LITTLEJOHN, A. A. J., concur.

OXNER, J., concurs in result.

STUKES, J., dissents.

LEGGE, Justice (concurring).

By the express language of Section 12-722 of the 1952 Code, the authority of the Secretary of State to accept service of process on behalf of a foreign corporation doing business in this State without having complied with the provisions of Section 12-721 is limited to actions or proceedings against such corporation "growing out of the transaction of any business in this State." That Section 10-424, relating to the same subject, does not expressly contain the same limitation, is immaterial. The three Sections, 12-721, 12-722 and 10-424, which constituted a single Section, Section 7765, in the 1942 Code, must be construed together.

The purpose of these provisions being the protection of those to whom the foreign corporation has become obligated on its transactions in South Carolina, we have upheld such service after the corporation's withdrawal from the State, where the cause of action had arisen here. *Terry Packing Co. v. Southern Express Co.,* 125 S. C. 198, 118 S. E. 628.

But where the cause of action, as here, did not arise out of the corporation's business within this State, the actual presence of the corporation, through agents in fact who may be personally served within this State, is essential to the jurisdiction. *Old Wayne Mutual Life Ass'n of Indianapolis, Indiana v. McDonough,* 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345; *Simon v. Southern Railway Co.,* 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492; *Lipe v. Carolina, etc., R. Co.,* 123 S. C. 515, 116 S. E. 101, 30 A. L. R. 248.

In *Thompson v. Queen City Coach Co.,* 169 S. C. 231, 168 S. E. 693, 697, this Court said:

"We can reach no other conclusion than that, in order for a circuit court of this state to have jurisdiction in a case against a foreign corporation where the cause of action arises without the state, it must be shown that the corporation is 'doing business' within the state. To hold otherwise would be inconsistent with the principles conceded and enunciated in the *Lipe case,* which, we may add, is cited with approval in *Hodges v. Lake Summit Co.,* 155 S. C. 436, 152 S. E. 658."

STUKES, Justice (dissenting).

The above caption includes two appeals in which the facts presently involved are the same. They will be discussed as if they were one.

The action is by a resident of this State, as plaintiff, upon a transitory cause of action for tort committed in the State of North Carolina between March 10 and March 12, 1952. Individual defendants have been personally served with process within this State. The other defendant, Rulane Gas Company, which will be referred to as the Company and as respondent, was incorporated in North Carolina and domesticated in this State in 1947 under the statutes which are now contained in Chapter 11 of Title 12 of the Code of 1952. They, in effect, subject domesticated foreign corporations to the laws of this State in like manner as corporations chartered in this State. See particularly, Section 12-705, and, for service of process, Section 12-721 *et seq.*

The respondent corporation was dissolved under the laws of North Carolina on March 31, 1952. It filed its certificate of withdrawal from this State on May 16, 1952. In its domestication papers it declared that its principal office in South Carolina was in care of Palmetto Rulane Company, Parsonage Street, Bennettsville, at which legal papers might be served upon it by delivery to any officer, agent, or employee found there, or, if none such be found, then by leaving copies on the premises. Code § 12-721.

Upon commencement of the action the summons and complaint were filed with the Secretary of State on March 5, 1953; and, with notice of such filing, were forwarded by registered mail to the Company at Charlotte, N. C., on March 4, 1953, and receipted for by one Ted L. Lewis for the Company on March 5. Copies of the summons and complaint were also personally delivered in Charlotte on March 6 to J. Fred Walters, a former officer of the Company, who was resident process agent for it. They were similarly served upon Doris Herndon in Bennettsville on March 4, a former

employee of Palmetto Rulane Company, or upon Peggy Roach Lewis, an employee of Suburban Rulane Gas Company of South Carolina.

There was filed with the Secretary of State an annual statement of respondent Rulane Gas Company, dated January 30, 1952, and signed and sworn to by J. Fred Walters, Assistant Secretary, in which the Charlotte, North Carolina, address was given, and the following, quoting, "That their place of business in South Carolina, at which process may be served, is Bennettsville."

Respondent moved to set aside the service of process upon affidavit of Walters, its former Assistant Secretary, in which there were recited the dissolution of respondent on March 31, 1952, withdrawal from this State on May 16, 1952, and return of its original Certificate of Domestication which had been issued in connection with the operation of respondent in this State; and that at the time of the commencement of the action respondent was not engaged in any business in this State and did not then have any agent, officer or employee upon whom process might be served. The service of process was set aside and dismissed by the lower court upon review of *Terry Packing Company v. Southern Express Company,* 125 S. C. 198, 118 S. E. 628, which was distinguished upon the ground that the cause of action there involved arose in this State out of the operations of the foreign corporation here.

The distinction is not alone sufficient to differentiate the cited case from this because under Code Section 10-214 a foreign corporation is subject to suit by a resident of this State for any cause of action, which means, of course, that a resident of this State may sue a foreign corporation in our courts upon a cause of action which arises in another jurisdiction, if it is a transitory cause of action and if jurisdiction of the defendant is properly obtained. *Lipe v. Carolina, C. & O. Ry. Co.,* 123 S. C. 515, 116 S. E. 101, 103, 30 A. L. R. 248. In the latter, jurisdiction of our court of a foreign corporation was sustained upon a cause of action for wrongful

death from injuries inflicted in North Carolina. The court said:

"The language of the statute, conferring the right upon any resident to bring an action in the circuit court against a foreign corporation 'for any cause of action,' and limiting the right of action of a nonresident, is too clear to require interpretative comment. The plaintiff, a resident of the state, was entitled to sue upon her transitory cause of action arising in the state of North Carolina, and the circuit court was invested with jurisdiction to try the cause. Obviously, if the service of process was otherwise sufficient to give the circuit court jurisdiction of the person of the defendant, the service was not invalidated or rendered nugatory by reason of the fact that the plaintiff's cause of action arose without the state. The power of the state 'to make the jurisdiction over the foreign corporation wide enough to include the adjudication of transitory actions not arising in the states' is not open to question."

Further reference to the *Lipe case* and other similar authorities will be later made.

The respondent had no inherent right to transact business in this State and could only do so by permission of the State. The right of a foreign corporation to do business and domesticate here is one of grace and the State has the right to impose reasonable conditions upon such foreign corporations as it thinks wise and prudent. *Fink v. National Mutual Fire Ins. Co.,* 90 S. C. 544, 74 S. E. 33, Ann. Cas. 1913D, 221, *State of Washington ex rel. Bond & Goodwin & Tucker v. Superior Ct.,* 289 U. S. 361, 53 S. Ct. 624, 77 L. Ed. 1256, 89 A. L. R. 653. One of the conditions imposed upon foreign corporations domesticating in South Carolina is that such corporations "* * * shall be subject to the laws of the same (South Carolina) in like manner as corporations chartered under the laws of this State * * *." Code § 12-705.

Code Section 12-601, which is one of the general laws to which the respondent became subject by domesticating in

South Carolina, provides that all dissolved corporations shall be continued bodies corporate for the purpose, among others, of defending suits. This section applies not only to domestic corporations, but to foreign corporations, both by its own terms and by the terms of Section 12-705. The legislature was explicit in its use of the words "all", "domestic" and "foreign", for it expressly provided a different procedure for the steps to be taken by a domestic corporation upon dis-solution, Section 12-608, and the withdrawal of a foreign corporation, Section 12-725. Section 12-644 is as follows: "Any such dissolution shall not bar an action for two years thereafter against the corporation or any of its members for any liability incurred during the existence of the corpora-tion." We think that respondent could no more escape the effect of the quoted statute by its withdrawal after dissolu-tion than a domestic corporation could by attempted removal from the State within two years after dissolution.

In view of the cited statutes, appellant had two years from March 1952, the date of the dissolution, in which to sue the respondent corporation in this State, or until March 1954; therefore, the summons and complaint were served well within this period, in March 1953. This seems to us the just and proper construction of our statutes as applicable to the facts of this case, which will be more fully developed.

In the case of *Terry Packing Company, supra,* 125 S. C. 198, 118 S. E. 628, the defendant foreign corporation had domesticated under the laws of this State but had ceased to do business here at the time of the commencement of the action; shortly thereafter, and before the hearing of its mo-tion to dismiss, it revoked its previous appointment of a proc-ess agent within the State. The court upheld jurisdiction and gave as a ground the fact that the cause of action arose from transactions within the State when the corporation was formerly doing business here. In the leading case of *Lipe v. Carolina C. & O. Ry. Co., supra,* 123 S. C. 515, 116 S. E. 101, 30 A. L. R. 248, which appears to have been decided about two years after the *Terry case* (although published in

an earlier volume of the reports) and makes no mention of it, the court upheld jurisdiction of a foreign corporation in a transitory cause of action which arose without the State. There the defendant was doing business in the State and service of process was made upon its agents here, but it had not domesticated.

It is seen that jurisdiction in the *Terry case* was upheld in a local cause of action although the foreign corporation had withdrawn from the State; while in the *Lipe case* there was upheld jurisdiction of a foreign corporation which was not domesticated in a cause of action which arose in another State. In neither case was there subsisting consent of the foreign corporation defendant to the jurisdiction of the courts of this State. Consent by respondent here accompanied its domestication which was not withdrawn prior to dissolution. Dissolution, we think, fixed and froze its rights with respect to causes of action then existing in favor of residents of this State.

The underlying rule which we think is applicable to the present facts is that adopted by the American Law Institute and set forth in Sec. 91 of its Restatement of Conflict of Laws, page 148. The stated *rationale* is that the jurisdiction is based upon consent, by which the foreign corporation is bound whether it is doing business in the State at the time the action is brought, or has ceased to do business in the State, or has never done business in the State. It is further pointed out that a State may forbid a foreign corporation to do business within it, or forbid it until it has appointed an agent or designated a public official with authority to accept service of process in actions brought against the corporation in the State *no matter where arising.* (Emphasis added.)

In *Aetna Casualty & Surety Co. of Hartford, Conn. v. Gentry,* 1942, 191 Okl. 659, 132 P. (2d) 326, 328, 145 A. L. R. 623, it was said:

"An examination of the decisions of the federal courts with reference to the question discloses the following: (1)

The power of the various states to enact valid legislation which authorizes the service of process upon an officer of the state as an agent of a domesticated corporation in connection with a cause of action which arose outside the state is recognized and approved (subject of course to the qualification that such service must be reasonably· calculated to bring the litigation to the attention of the corporation). (2) When the legislative intent is not clear and the state court has not otherwise spoken on the subject, federal courts favor a construction which excludes from the operation of such statutes causes of action arising outside the jurisdiction of the state. (3) When the state court has spoken upon the subject its decision governs the federal court as to the meaning of the statute." (Citing cases.)

The editor of the annotation appended to the foregoing decision comments upon the authorities as follows, at pages 657, 658 of 145 A. L. R.:

"Where, however, the liability on the foreign transaction has attached or accrued before the withdrawal of the corporation from the state, although the service upon the pub-· lic official in an action to enforce such liability is not made until after the withdrawal, a different situation is presented. In such a case it is contended in respect of a foreign transaction, and it is very plausibly held in respect of a local transaction, that, the liability having attached before the withdrawal and during the time the corporation was by its own consent subject to suit in the state by service of process upon the public officer, it cannot, at least in respect of a liability already accrued, even on a foreign transaction, withdraw from the state and revoke its authorization as to acceptance of service by the public officer, and that in spite of such actual withdrawal and revocation, the authority as to acceptance of service remains in effect, in the contemplation of the law, for the purpose of the enforcement of foreign, as well as local, causes of action."

Still a different factual situation from those in our foregoing cases, and from this, was presented in *Ezell v. Rust*

*Engineering Co.,* D. C., 1948, 75 F. Supp. 980, 985, opinion by Judge Wyche of the Western District of the State. Jurisdiction was upheld of a domesticated foreign corporation upon a transitory cause of action which arose in another state. There the contention was that at the time of the commencement of the action, and for months before, the defendant was not doing business in the State, despite its domestication, and could not be sued in this State upon a foreign cause of action which had no relation to its former business in the State. The exhaustive opinion is replete with authorities, the citation of which, in the interest of brevity (or less length!), will not be repeated here. Aptly pointed out was the distinction between voluntary domestication, as here, and a compulsory official process agent designated by statute, with respect to jurisdiction of foreign causes of action. It was held that domestication entailed permanent presence in the State (until properly and timely revoked, we add). We quote the following from the opinion:

"The contention made here by defendant was presented in *Pennsylvania Fire Ins. Co. of [Philadelphia] v. Gold Issue Min. & Mill. Co., supra* (243 U. S. 93, 37 S. Ct. [344] 345 [61 L. Ed. 610]), that is, that it would offend against the Fourteenth Amendment to hold that an Arizona corporation could be served with process in Missouri by service upon its Missouri statutory process agent in an action upon a transitory cause arising in Colorado. The court held that the foreign corporation appointed a process agent 'in language that rationally might be held to go to that length' and that to so hold 'did not deprive the defendant of due process of law'. The courts of South Carolina take a similar view of the constitutional question. *New York Life Ins. Co. v. McMaster,* 84 S. C. 495, 66 S. E. 877."

It is seen that the case *sub judice* presents a somewhat different problem from either the foregoing. Respondent voluntarily consented to the jurisdiction of our courts when it domesticated. Surely it was as subject to jurisdiction of this case as was the defendant in the *Lipe case,* if this suit

had been instituted immediately upon the accrual of the cause of action. At that time respondent was unquestionably domesticated in this State. As a part thereof it was subject to the laws applicable to domestic corporations, one of which is Section 12-644 which provides that after dissolution a corporation may be sued during a period of two years. Remarkably, some time after respondent was dissolved in its State of North Carolina, which was very soon after the instant cause of action is alleged to have arisen, it filed withdrawal from this State before institution of the instant action. Our statute, to which respondent voluntarily became subject upon domestication, provides as follows with reference to the powers of a corporation after dissolution:

"§ 12-601. Continuance for closing affairs after expiration, dissolution, etc.

"All corporations, whether they expire by their own limitation or be annulled by the General Assembly or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established."

Similar statutes are common, if not universal, in other States. There is contained in appellant's brief the following copy of a portion of the corresponding Section of the North Carolina Code which respondent has not challenged and we have therefore considered it as admitted:

"§ 55-132. Corporate existence continued three years.— All corporations whose charters expire by their own limitation, or are annulled by forfeiture or otherwise, shall continue to be bodies corporate for three years after the time when they would have been so dissolved, for the purpose of prosecuting and defending actions by or against them, and of enabling them gradually to settle and close their concerns, to dispose of their property, and to divide their assets; but

not for the purpose of continuing the business for which the corporation was established."

A statute enacted in the State of the domicile continuing corporations for the purpose of defending suits will be given extra-territorial effect by the courts of another State so as to allow suits to be prosecuted against the continued corporations. 23 Am. Jur., Foreign Corporations, Section 475, p. 460, citing *Frink v. National Mut. Fire Ins. Co., supra,* 90 S. C. 544, 74 S. E. 33, Ann. Cas. 1913D, 221.

Thus respondent was doubly subject to this action in our courts despite its dissolution—both by the statute of its State of domicile, North Carolina, and that of its State of domestication, South Carolina.

A well-considered case in which a foreign corporation attempted to withdraw domestication after dissolution in its home State, and set those facts up in contest of jurisdiction of the courts of the State of domestication, is *DuPont Engineering Co. v. John P. Harvey Const. Co.,* 1931, 156 Va. 582, 158 S. E. 891, which upheld jurisdiction. The first four syllabi of the S. E. Reporter follow :

"Domesticated foreign corporation could not, by withdrawing from state and surrendering charter in home state, deprive state courts of jurisdiction of suit by resident against corporation for breach of contract, instituted within three years from withdrawal.

"State may prescribe conditions on which foreign corporation may do business within state.

"Foreign corporation, when domesticated, stands on same footing as domestic corporations of like kind. ·

"Voluntary dissolution of domesticated foreign corporation does not extinguish obligation due by or to it."

It is true that the cause of action in the last cited, Virginia case arose in that State but we think that if the cause of action had been foreign but in favor of a resident of Virginia who was plaintiff, the result would have been the same.

The brief of respondent contains this significant concession: "The Rulane Gas Company (respondent) during the time that it was domesticated in the State of South Carolina may have been amenable to process in the within actions." What caused the amenability to cease? Not its dissolution —this under the statutes of North Carolina and South Carolina; for the purpose of this case they are the same and our statute became applicable to respondent when it domesticated here; that of its own State was, of course, also applicable, as we have seen. And we think that its post-mortem attempt at withdrawal was likewise ineffectual to close the courts of this State to a resident who, admittedly, previously could have maintained his action in our courts, and force him to go to North Carolina to prosecute his cause of action. This is so because the rights of the parties were fixed upon the dissolution of the corporate respondent and it could not afterward by the belated advice of attempted withdrawal and appellant's right to sue in his own State.

Should respondent prevail in his contention it would mean that a local corporation could be sued in our courts at any time within two years after dissolution, but not this foreign, domesticated corporation. The following is from the opinion in *Castle's Administrator v. Acrogen Coal Co.,* 145 Ky. 591, 140 S. W. 1034, 1035: "A foreign corporation cannot come into this state and transact business herein, thereby taking up the liabilities as well as the rights of a domestic corporation, and at the will or pleasure of its stockholders surrender its charter and leave the state and thus deprive the state courts of jurisdiction such as they would have over a domestic corporation of like character."

It seems to us that it would be quite illogical to hold that appellant is now barred from remedy in our courts because of the fortuitous circumstance that his alleged cause of action arose across the North Carolina line and at the same time say that he could have sued here if he had commenced his action before respondent's withdrawal from this State after its dissolution. As we construe them, the statutes which have

been cited prevent this anomaly. Under them it was not within the corporate power of respondent to withdraw from this State after its dissolution and thereby bar prosecution of an existing cause of action in our courts, which confessedly could have been brought -before the attempted withdrawal from the State.

Only by the decision which has been indicated can the respondent dissolved, domesticated corporation be treated like a domestic dissolved corporation under the same circumstances, that is, subjected to suit in our courts during a period of two years after dissolution; and equality of treatment with respect to the enforcement of liabilities is the indubitable intention of our statutes.

The several methods of service of the summons and complaint upon the respondent are not in issue; undoubtedly it duly`received the papers and therefore had notice of the pendency of the action because it promptly specially appeared to contest the jurisdiction. *American Ry. Express Co. v. Fleishman, Morris & Co.,* 1928, 149 Va. 200, 141 S. E. 253. As already said, the lower court sustained objection to its jurisdiction and dismissed the service upon the ground that the cause of action did not arise in the State, which we hold to be untenable. Respondent has not submitted sustaining grounds additional to that relied upon by the trial court, so nothing else is presented by the appeal. Section 7 of Rule 4 of the Supreme Court. However, for provisions for service of process upon a domesticated foreign corporation by delivery to the Secretary of State, see Code, §§ 12-722, 12-723.

The order under appeal should be reversed.